**Marvin L. KAISER, Plaintiff and Appellee,**

v.

**Lillian KAISER, a/k/a Lillian Walters Kaiser, Defendant and Appellant.**

**Civil No. 960013.**

Supreme Court of North Dakota.

Nov. 18, 1996.

Ronald H. McLean, of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellee. Maureen Holman on brief.

John G. Crist, of Dorsey & Whitney, Billings, MT, for defendant and appellant.

VANDE WALLE, Chief Justice.

Lillian Kaiser appealed from an order denying her motion for partial summary judgment and from an amended judgment entered after a new trial on remand. We affirm.

Marvin and Lillian Kaiser married in 1972 and divorced in 1987. The 1989 divorce judgment awarded Marvin property with a net valuation of $873,349.96 and awarded Lillian property with a net valuation of $1,183,137.41. Lillian appealed from an order denying her motion for a new trial, but did not appeal from the judgment. In that appeal, Lillian challenged, among other things: (1) the trial court's valuation of her interest, awarded to her, in Imperial Oil of North Dakota, Inc., a closely-held corporation owned by Lillian's family, at $600,000; (2) the trial court's valuation of Sun Well Service, Inc., awarded to Marvin, at $167,000; and (3) the trial court's valuation of Marvin's retirement accounts because it reduced their value by possible tax liabilities.

On appeal this court concluded that the trial court erred in valuing Sun Well, Lillian's interest in Imperial Oil and Marvin's retirement accounts. We summarized our conclusions:

"We conclude that the trial court erred in valuing Lillian's interest in Imperial by accepting Marvin's valuations of Imperial's assets; that Sun Well Service, Inc., should not have been valued by deducting auction expenses; and that theoretical tax liabilities should not have been deducted in valuing Sun Well Service, Inc., and Marvin's retirement accounts. We further conclude that the trial court manifestly abused its discretion in denying Lillian's motion for a new trial with respect to those matters. With regard to those matters, the order denying Lillian's motion for a new trial is reversed."

*Kaiser v. Kaiser*, 474 N.W.2d 63, 70 (N.D. 1991) (*Kaiser I* ). We "remanded for further proceedings ... to allow the trial court to properly value Sun Well Service, Inc., Marvin's retirement accounts, and Lillian's interest in Imperial Oil of North Dakota, Inc., and to redetermine an equitable distribution of the parties' marital property." *Id.* at 71.

On remand, the trial court accepted new evidence and valued the stock of Sun Well, as "if a buyer could be found for the stock of Sun Well who would immediately liquidate the physical assets of the corporation." Based on the testimony of Gregory Cleveland, the trial court found the market value of the stock of Sun Well to be $129,444 and reduced the net equity awarded to Marvin by $37,556. The trial court added to Marvin's retirement accounts amounts which had been erroneously deducted for theoretical taxes and granted partial summary judgment. The trial court accepted new evidence and valued Lillian's 9.2 percent ownership interest in Imperial Oil at $650,000. The trial court made no changes in the property ultimately awarded to each party.

Lillian argues that the method of valuing and the value of Sun Well "were conclusively established by the first trial and this Court's decision in *Kaiser I*," and "should not have been relitigated in the second trial," in that the "directions in *Kaiser I* simply required the District Court to take Marvin's $167,000 liquidation value for Sun Well, and add to it the auction costs and theoretical tax liabilities ... improperly deducted," giving Sun Well a corrected value of $421,578.80.

Although *Kaiser I* upheld the trial court's valuation of Sun Well on the basis of the liquidation value of its assets, it did not pre-

clude other methods of valuation. *Kaiser I* did not direct that Sun Well be revalued by simply adding back the improper deductions for auction expenses and theoretical tax liabilities. Lillian's argument fails to recognize that *Kaiser I* was an appeal from an order denying her motion for a new trial, not from a judgment. Lillian requested a new trial on the value of Sun Well, was granted a new trial on that issue, and cannot now complain that the trial court held a new trial on the issue. Furthermore, while "it is the duty of the lower court, upon a remand, to comply with the mandate of the Supreme Court," *Dobler v. Malloy,* 214 N.W.2d 510, 513 (N.D. 1973), "the court is not shackled to the precise pleadings and evidence of the prior trial unless so limited by the terms of the remand," *id.* The trial court was not "so limited by the terms of the remand" in *Kaiser I.* Because the controversy over the value of Sun Well had "not been finally disposed of, the court below [was] free to make any order or direction in the further progress of the case not inconsistent with the decision and opinion of the appellate court, and conformable to law and justice." *Dobler v. Malloy,* 214 N.W.2d at 513–14. We conclude that the trial court did not err in retrying the value of Sun Well.

■ Lillian further contends that the trial court erred in adopting a stock valuation of Sun Well, when Marvin and his expert, Gregory Cleveland, testified in the first trial that Sun Well had no value as a going business and the liquidation value of its assets was the only proper way to value it. *Kaiser I* upheld liquidation value as a method of valuing Sun Well, but did not preclude other methods on remand for a new trial. Marvin presented evidence at the new trial on the theory that the common stock of Sun Well would have a value "if a buyer could be found for the stock of Sun Well who would immediately liquidate the physical assets of the corporation." The trial court did not err in adopting that method of valuation, even though Kaiser and Cleveland thought liquidation value was a better method of valuation, when it is clear that Kaiser, Cleveland, and the trial court all believed that liquidation value, without deducting selling expenses and tax liabilities, did not truly reflect Sun Well's actual value.

Valuation of marital property is treated as a question of fact subject to the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P. *Kaiser I.* The trial court valued the stock of Sun Well at $129,444, in accordance with the testimony of Gregory Cleveland, Marvin's valuation expert. From our review of the entire record, we have not been left with a definite and firm conviction that a mistake has been made in valuing the Sun Well stock. The trial court's valuation of Sun Well at $129,444 is, therefore, not clearly erroneous.

At the first trial, the trial court valued Lillian's interest in Imperial Oil at $600,000. After a new trial on remand, the trial court valued Lillian's interest in Imperial Oil at $650,000. Evidence at the second trial showed that Imperial Oil had more cash and oil and gas properties than were shown at the first trial. Also, the district court explained that in initially valuing Lillian's interest at $600,000, "it appears that the discount allowed for the minority interest represented by Lillian's stock was too severe, considering the beneficial and remedial rights of minority stockholders in North Dakota provided in NDCC 10–19.1–87 and 88."

■ Lillian does not challenge the trial court's $733,170.96 gross valuation of her interest in Imperial Oil. However, she contends it should have been reduced by a minority discount of no less than 25 percent. She relies on her expert's testimony in the first trial that a 40 percent discount is appropriate, and on Cleveland's testimony that a discount of 25–35 percent is considered acceptable in valuing minority interests in a corporation.

Valuation of minority shares in a close corporation " 'is an inexact science.' " *Fisher v. Fisher,* 546 N.W.2d 354, 358 (N.D.1996), quoting Charles W. Murdock, *The Evolution of Effective Remedies for Minority Shareholders and Its Impact Upon Valuation of Minority Shares,* 65 Notre Dame L.Rev. 425, 473 (1990). Perhaps a discount of 25–40 percent would be appropriate in valuing minority shares in some close corporations, as suggested by the parties' expert witnesses. That does not make a lesser discount inappropriate in valuing minority shares in other

close corporations. As we noted in *Fisher v. Fisher*, 546 N.W.2d at 358, Chapter 10–19.1, N.D.C.C., "provides significant protection for minority shareholders in given situations." After considering the protections afforded dissenting shareholders by § 10–19.1–87 and 88, which contain procedures for a shareholder to obtain the fair value of his or her shares in a corporation, the trial court concluded it had discounted Lillian's interest too severely after the first trial. Marvin testified that no minority discount should be applied because Imperial Oil had been run for the benefit of the minority shareholders, that Imperial Oil had given oil and gas properties to the minority shareholders and had paid some of their personal expenses. Cleveland testified there should be no minority discount in a family-owned business in divorce cases, where, as here, Lillian's family owns the corporation and the minority shares are not being sold to unrelated, unknown buyers. In light of the foregoing considerations, we conclude that the trial court's value of Lillian's interest in Imperial Oil of $650,000, representing a minority discount of 11.3 percent rather than the 25–40 percent discount sought by Lillian, is not clearly erroneous.

With the changes in asset valuations she has sought, Lillian asserts that we should direct the transfer of $202,011.84 in marital assets from Marvin to her. But we have upheld the trial court's changes in valuations, which increased Marvin's equity by adding $56,029.16 to his retirement accounts, reduced Marvin's equity by reducing the value of Sun Well by $37,556, and increased Lillian's equity by increasing the value of her shares of Imperial Oil by $50,000. The value of Lillian's retirement accounts was also increased by $100, without challenge. The adjusted valuations leave Marvin with property having a net value of $891,823.12 (41.97 percent of the total marital property equity) and leave Lillian with property having a net value of $1,233,237.41 (58.03 percent of the total marital property). Marvin and Lillian will each receive substantial passive income. Marvin was burdened with substantial debts to pay, while Lillian was left with very little debt. We conclude that the trial court's property distribution is not clearly erroneous.

Affirmed.

SANDSTROM and MESCHKE, JJ., RALPH J. ERICKSTAD, Surrogate Judge, and JAMES M. BEKKEN, District Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, and JAMES M. BEKKEN, District Judge, sitting in place of MARING and NEUMANN, JJ., disqualified.