1998 ND 156

**Colleen Marie LARSON, Plaintiff and Appellant,**

v.

**Darrell L. LARSON, Defendant and Appellee.**

Civil No. 970320.

Supreme Court of North Dakota.

Aug. 18, 1998.

Tracey R. Lindberg, of Krekelberg Law Firm, Fergus Falls, MN, for plaintiff and appellant.

Richard E.T. Smith (argued) and Janel B. Fredericksen (appearance), of Smith & Strege, Wahpeton, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Colleen Larson appealed from an amended divorce judgment modifying the amount of child support to be paid by Darrell Larson. We conclude the trial court erred in amending its decision without a motion to reopen, based upon affidavits submitted after the parties had rested, the hearing had concluded, and the court had issued its memorandum opinion. We therefore reverse and remand for further proceedings.

## I

[¶ 2] When Colleen and Darrell divorced in 1992 their stipulated settlement agreement was incorporated into the judgment. Colleen received physical custody of the parties' two minor children and Darrell was ordered to pay child support of $600 per month. Darrell also agreed to pay approximately $1,700 per year for each child for a college fund. Darrell was required to annually provide to Colleen copies of his personal tax returns and the returns of Richland County Implement ("Richland"), a corporation solely owned by Darrell.

[¶ 3] In 1996, Colleen moved for modification of child support to comport with the child support guidelines. She asserted the tax returns, as well as evidence of Darrell's lavish lifestyle, demonstrated he was capable of paying far more than $600 per month for support of the children. Darrell opposed the motion, asserting his salary from Richland was under $16,000 per year and that loan restrictions precluded him from taking additional funds out of the business. Darrell also asserted that, in calculating support under the guidelines, his income from the preceding five years should be averaged to take into account fluctuations in his business income.

[¶ 4] On October 1, 1996, the parties resolved certain discovery disputes and stipulated to a temporary increase in child support to $1,033 per month while the motion was pending. Evidentiary hearings were held on November 19, 1996, and February 5, 1997, and the parties submitted post-hearing briefs.

[¶ 5] On May 2, 1997, the trial court issued its memorandum opinion. The court averaged Darrell's income for the years 1991 through 1995 and determined Darrell's monthly net income for child support purposes was $11,483. The court set child support at $3,253 per month commencing February 1, 1997.

[¶ 6] As directed by the court, Colleen's counsel prepared proposed findings of fact, conclusions of law, and order for judgment. Darrell's counsel responded with a letter to the court, arguing that principal payments made on lease/purchase transactions with Ford New Holland should have been subtracted from his income. Darrell also submitted affidavits and attached copies of lease agreements and handwritten calculations purporting to show the amount of these principal payments. Colleen's counsel replied with a letter objecting to the procedure, pointing out Darrell had the opportunity to present this evidence at the prior hearings and had further failed to disclose these principal payments in discovery. Colleen also objected to the lack of opportunity for cross-examination on this evidence and her inability to adequately rebut Darrell's belated evidence. Darrell subsequently submitted additional evidence to support his theory. Darrell did not, however, at any time move to reopen for additional evidence.

[¶ 7] The trial court decided to consider the additional evidence and issued an amended memorandum opinion finding Darrell's average income for 1992 through 1996[1] was $8,418 per month, resulting in support of $2,387 per month for two children under the guidelines. The court issued findings of fact, conclusions of law, and order for judgment, and an amended judgment from which this appeal is taken was entered on September 17, 1997.

## II

[¶ 8] The trial court's determination on child support is a finding of fact, and will be affirmed unless it is clearly erroneous. *Peterson · v. Peterson,* 555 N.W.2d 359, 363 (N.D.1996). A finding is clearly erroneous if, on review of the entire record, we are left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law. *Wolf v. Wolf,* 557 N.W.2d 742, 744 (N.D. 1996).

[¶ 9] Colleen asserts the trial court erred in averaging Darrell's income from a five-year period to calculate his monthly income for child support. The guidelines indi-

---

1. The court did not explain why it used 1992–1996 figures when the original memorandum opinion used 1991–1995 figures. Colleen's counsel suggested that this might have been a typographical error. The trial court can address this on remand.

cate averaging fluctuating income is appropriate, particularly when the obligor is self-employed:

> Income must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income. Where gross income is subject to fluctuation, particularly in instances involving self-employment, information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided.

N.D. Admin. Code § 75–02–04.1–02(7). We have previously interpreted this guideline provision to authorize the trial court to average fluctuating income from self-employment, thereby providing the most accurate estimation of the obligor's income. *See Houmann v. Houmann,* 499 N.W.2d 593, 594–95 n. 1 (N.D.1993); *Clutter v. McIntosh,* 484 N.W.2d 846, 848–49 (N.D.1992); *see also Helbling v. Helbling,* 541 N.W.2d 443, 447 (N.D.1995); *Mahoney v. Mahoney,* 538 N.W.2d 189, 194 (N.D.1995).

[¶ 10] Colleen argues the court should have averaged Darrell's income only for 1994 and 1995, his two highest-earning years. The court instead determined a five-year average provided a more accurate estimation of Darrell's income. On this record, considering the nature of the business, we conclude the trial court's decision to average over five years, instead of two, was not clearly erroneous.

### III

[¶ 11] Colleen asserts the trial court erred in amending the decision in this case based upon evidence submitted by Darrell after the hearing was concluded and the court had issued its first memorandum opinion. We agree.

2. The record in this case contains only a very cryptic and incomplete picture of these transactions. In one post-hearing affidavit, Darrell attempted to explain the basics of the program:
> [Richland] is enrolled in a finance lease program with Ford New Holland, Inc. Under the program [Richland] leases new tractors to its customers and the payments are made to Ford New Holland as assignee, to be credited to Richland County Implement's obligation to

[¶ 12] The dispute centers upon Darrell's assertion the trial court should have subtracted principal payments made on lease/purchase transactions with Ford New Holland.[2] Darrell asserts that, if depreciation on the equipment covered by the leases is added back in to Darrell's income under the guidelines, the amount of the principal payments should be subtracted out. Darrell relies upon N.D. Admin. Code § 75–02–04.1–05(2):

> After adjusted gross income from self-employment is determined, all business expenses allowed for taxation purposes, but which do not require actual expenditures, such as depreciation, must be added to determine net income from self-employment. Business costs actually incurred and paid, but not expensed for internal revenue service purposes, such as principal payments on business loans (to the extent there is a net reduction in total principal obligations incurred in purchasing depreciable assets), may be deducted to determine net income from self-employment.

We have stressed that this guideline provision allows a deduction from income only for payments made on business loans used to purchase depreciable assets, and only to the extent there is a net reduction in total principal obligations. *Edwards v. Edwards,* 1997 ND 94, ¶ 9, 563 N.W.2d 394; *see also Mahoney,* 538 N.W.2d at 194–95.

[¶ 13] At the hearings, Colleen introduced evidence of the depreciation as shown on the tax returns, including the amount for these lease transactions. Darrell presented no evidence of the amount of principal payments. In her post-hearing brief, Colleen submitted proposed income calculations for Darrell which included the depreciation. Darrell's post-hearing brief did not challenge inclusion of the depreciation or mention the principal

Ford New Holland. The depreciation on the lease program tractors is reported on Richland County Implement's books and it is the owner of the tractors for the 36 months during the lease period. The depreciation and principal payment amounts are identical. After the 36 month lease period is up, the customer ordinarily buys the tractor at the residual value of the depreciated asset.

payments. Only after the trial court issued its memorandum opinion several months later, did Darrell first raise the issue and attempt to submit evidence on the principal payments. Darrell's counsel candidly admitted at oral argument there was no showing made to the trial court of good cause for the failure to present this evidence at the two earlier hearings.[3]

[¶ 14] Our rules do not countenance the informal procedure used in this case to supplement the record and introduce new issues after the parties have rested, the hearing has concluded, and the court has issued its memorandum opinion. In a similar context, we held that it was improper for a party to attempt to submit evidence by affidavit of changes in value of marital property after the hearing:

> The difficulty with the procedure attempted by Gary in this case is evident. Parties would be free to file further "evidence," not subject to cross-examination, whenever they believed a marital asset had changed in value. This procedure would certainly lead to a never-ending trial by affidavit, with parties continually submitting account statements and other materials with each fluctuation of the financial markets.
>
> We recognize that relief may be justified in extraordinary cases when a substantial, unanticipated change in valuation of an asset occurs after trial but before distribution.... However, the proper procedure to remedy that result is a motion to reopen for additional evidence. *See, e.g., Steckler v. Steckler*, 492 N.W.2d 76, 79–80 (N.D. 1992); *Leno v. Ehli*, 339 N.W.2d 92, 96 (N.D.1983); NDRCivP 50, Explanatory Note. The parties could then present evidence of changes in values, with the opportunity to cross-examine witnesses and challenge the other party's proffered valuation. Gary did not move to reopen the trial, but sought amendment of the valuations based only upon his affidavit and an amended NDROC 8.3 statement.

*Grinaker v. Grinaker*, 553 N.W.2d 204, 209 (N.D.1996) (footnote omitted); *see also Zuger v. Zuger*, 1997 ND 97, ¶ 6, 563 N.W.2d 804. As in *Grinaker*, Darrell did not move to reopen the hearing, but sought amendment of the court's memorandum opinion relying only upon new evidence presented by affidavit, without the opportunity for cross-examination.

[¶ 15] As *Grinaker* demonstrates, the proper procedure in this case would have been a motion to reopen to present additional evidence at a hearing. It is within the sound discretion of the trial court to determine whether to permit a party to reopen the case to introduce additional evidence after the party has rested. *E.g., Steckler v. Steckler*, 492 N.W.2d 76, 79–80 (N.D.1992); *Leno v. Ehli*, 339 N.W.2d 92, 96 (N.D.1983). Darrell did not make the appropriate motion in this case, and the court did not have the opportunity to exercise its discretion. Rather, Darrell attempted to circumvent the rules and conduct a post-hearing trial by affidavit. This abbreviated procedure was improper and denied Colleen a full opportunity to challenge this evidence through cross-examination and rebuttal witnesses in open court, particularly in light ·of the complex factual and legal issues presented.

[¶ 16] We conclude the trial court erred in amending its decision based upon Darrell's post-hearing submissions. We therefore remand for further proceedings, with Darrell to be afforded the opportunity to make a proper motion to reopen to present additional evidence. The court may then exercise its discretion in determining whether to allow reopening for the additional evidence. If Darrell fails to timely make such a motion, the court is directed to issue findings of fact, conclusions of law, and order for judgment based upon the evidence presented to the court in the prior hearings.

### IV

[¶ 17] Colleen asserts the trial court erred in awarding her only $3,000 in attorney

---

3. At one point during redirect examination of her economic expert witness at the second hearing, Colleen asked about principal payments on the business loans and why the expert had not considered them in calculating Darrell's income. Darrell's objection that this questioning was beyond the scope of his cross-examination was sustained, and no other evidence of the principal payments was presented.

fees and costs, and seeks an additional $2,905. We will overturn an award of attorney fees on appeal only if the appellant affirmatively establishes the trial court has abused its discretion. *Quamme v. Bellino,* 540 N.W.2d 142, 148 (N.D.1995). We conclude the trial court did not abuse its discretion in awarding attorney fees.

█ [¶ 18] Colleen also seeks attorney fees for this appeal. Although we have concurrent jurisdiction with the trial court to award attorney fees on appeal, we have often stated our preference that the trial court initially determine attorney fees, because it is in a better position to assess the relevant factors. *E.g., Withey v. Hager,* 1997 ND 225, ¶ 10, 571 N.W.2d 142; *Shaver v. Kopp,* 545 N.W.2d 170, 177 (N.D.1996). The trial court should consider this issue on remand.

V

[¶ 19] In light of our resolution of these issues, it is unnecessary to determine the remaining issues raised by the parties. We reverse the amended judgment and remand for further proceedings in accordance with this opinion.

[¶ 20] MESCHKE, MARING, NEUMANN and SANDSTROM, JJ., concur.

