2015 ND 112

**John Duane ADAMS, Plaintiff and Appellee**

v.

**Sandra Kathleen ADAMS, Defendant and Appellant.**

No. 20140259.

Supreme Court of North Dakota.

May 4, 2015.

James R. Brothers, Fargo, N.D., for plaintiff and appellee.

Joshua M. Benson (argued) and Kathleen M. Newman (on brief), Minneapolis, MN, for defendant and appellant.

Jerilynn Brantner Adams (appeared), Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Sandra Adams appeals from an amended supplemental judgment dividing the marital estate between her and John Adams. On appeal, Sandra Adams argues the district court's property division was not equitable, because the court erred in not applying discounts to the values of properties awarded to her. She also argues the court erred in applying a two percent interest rate to a payment from John Adams equalizing the court's property division. We affirm.

I

[¶ 2] Sandra Adams and John Adams were married in 1971. John Adams sued her for divorce in 2011. The district court entered a partial judgment granting the parties a divorce in April 2013, and an October 2013 trial was held on property division and other issues.

[¶ 3] Over the course of the marriage, the parties built a substantial and complex marital estate, consisting primarily of ownership in businesses that own residential and commercial real estate. Many of the businesses are interrelated and interdependent. Because of the complexities of the businesses, the district court found it was difficult to divide the entities in distributing the marital property. The court also found factors weighing against liquidation of the businesses, and it was in "the best interest of both parties to keep the interconnected and interdependent business entities together, and operating as going concerns." The court found John Adams had the most knowledge and involvement in the businesses, and awarded them to him. Sandra Adams was awarded assets that could be separated from the business entities.

[¶ 4] AKA Hotel Ventures ("AKA") and Adams Investment Limited Partnership ("Adams Investment LP") are examples of interrelated entities. AKA owns the Radisson Hotel ("Radisson") in Fargo. The Radisson consists of 13 floors of an 18–story building, the Radisson Tower. Adams Investment LP is a holding company owning a majority of the parties' mari-

tal assets, including 99 percent of AKA and the 15th and 16th floors of the Radisson Tower ("two floors"). Adams Investment LP loaned money to AKA to fund renovations to the Radisson, which left $12,000,000 payable by AKA to Adams Investment LP. Sandra Adams was active in the management of the Radisson. The district court found the Radisson and the two floors could be separated from AKA and Adams Investment LP and awarded the Radisson and the two floors to Sandra Adams.

[¶ 5] Before trial, the parties stipulated to the appointment of Dianna Kindseth, a neutral appraiser, to itemize and value the marital assets, including the numerous business entities owned by the parties. Real estate appraisers were also retained by Kindseth and by the parties individually. In valuing the businesses, Kindseth and other appraisers prepared detailed valuation reports describing the valuation method used, information about each business, and the information reviewed to determine the fair market value of each business.

[¶ 6] The value of the Radisson was disputed; Sandra Adams valued it at $7,750,000, and John Adams valued it at $12,000,000. The district court valued the Radisson at $10,000,000. The court valued the two floors at $2,750,000, which was not disputed. The Radisson was subject to a mortgage of $3,250,000. Sandra Adams was awarded the Radisson subject to the mortgage, but was not responsible to pay the $12,000,000 due from AKA to Adams Investment LP.

[¶ 7] Another dispute between the parties was whether discounts for lack of marketability or lack of control should be applied in valuing the various business entities owned by the parties. Sandra Adams argued no discounts should be applied, and John Adams argued the district

court should adopt Kindseth's recommendations regarding discounts. In determining the fair market value of each entity, Kindseth applied a discount for lack of marketability or lack of control if she concluded a discount was appropriate on the basis of her overall evaluation of each entity. If a discount was applied in valuing an entity, the valuation report included a detailed discount appraisal report explaining the discount. Kindseth applied an eight percent discount for lack of marketability to the value of Adams Investment LP. She did not apply a discount to the value of AKA, because it had a negative net asset value. The district court adopted Kindseth's recommendations, explaining:

As part of her engagement, Kindseth was specifically instructed to consider whether discounts were appropriate. If so, she was also asked to set the appropriate rates. In the various reports, Kindseth provides a detailed analysis supporting her conclusions as to discounts. In each instance, this reasoning appears to be sound. The specific discounts suggested are all relatively modest. Therefore, the court-appointed neutral's recommendations as to discounts will be adopted and followed.

[¶ 8] The parties agreed to an equal division of property. Using the valuation reports prepared by Kindseth and the other appraisers, the district court valued the marital estate at $46,483,507. Sandra Adams was awarded property valued at $16,375,087, including the Radisson, the two floors, and two undeveloped properties in Fargo.

[¶ 9] In valuing and dividing the marital estate, the district court applied Kindseth's recommended discounts to the business entities. The district court applied the recommended discounts to the values of the two undeveloped properties awarded to Sandra Adams. The court did not apply

a discount to the values of the Radisson and the two floors.

[¶ 10] To equalize the division of property, Sandra Adams was awarded an equalization payment of $6,866,666 from John Adams, payable over five and a half years at two percent interest. At trial, neither party presented evidence on appropriate payment terms if an equalization payment was awarded. In his post-trial brief, John Adams argued an equalization payment should be paid within approximately six years at the applicable Federal rate, which was 1.72 percent. Sandra Adams argued an equalization payment should be paid within five years at the state judgment interest rate, which was 6.5 percent. In awarding the equalization payment, the district court stated:

> The parties agree that John does not have the present capacity to borrow or pay this amount. It will need to be paid over time. Moreover, the terms need to be realistic and reasonable. A requirement that John pay more than he can likely afford through the normal course of business would not be in the best interest of either party. The goal is to keep the business operations intact, viable and productive. Should John be forced to sell off parts in order to make payments, both parties are likely to come up short in the end. For the same reason, the interest rate must be reasonable.

The court decided John Adams' payment plan was the most reasonable and realistic, and also decided "[i]n the current economy, a 2% interest rate is appropriate."

[¶ 11] After the district court entered its supplemental judgment, Sandra Adams moved for amended findings and a new trial, arguing the court erred in applying a two percent interest rate to the equalization payment. The district court amended the supplemental judgment by correcting some oversights, but the court did not alter the two percent interest rate on the equalization payment. At the hearing on the motion, the court further discussed the two percent rate applied to the equalization payment:

> [I]f you've got cash that you want to put in a very safe and conservative investment these days, 2 percent is about what you're going to get. And, again, that was just a small part of the realities that drove my decision, but the bigger part was just what's practical and what's reasonable and what's fair and what's equitable.

[¶ 12] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Sandra Adams' appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 13] Sandra Adams argues the district court erred in its application of discounts when valuing the property awarded to her. When a divorce is granted, the district court makes an equitable distribution of the parties' property and debts. N.D.C.C. § 14–05–24(1). This Court reviews a district court's distribution of marital property as a finding of fact, and will not reverse unless the findings are clearly erroneous. *McCarthy v. McCarthy*, 2014 ND 234, ¶ 8, 856 N.W.2d 762. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Id.* (quoting *Hoverson v. Hoverson*, 2013 ND 48, ¶ 8, 828 N.W.2d 510). We view the evidence in the light most favorable to the findings, and the district court's factual

findings are presumptively correct. *McCarthy*, at ¶ 8. Valuations of marital property within the range of the evidence presented are not clearly erroneous. *Dvorak v. Dvorak*, 2005 ND 66, ¶ 20, 693 N.W.2d 646. A choice between two permissible views of the evidence is not clearly erroneous if the district court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations. *Fox v. Fox*, 2001 ND 88, ¶ 14, 626 N.W.2d 660.

[¶ 14] Sandra Adams argues the district court erred in failing to apply discounts to the values of the Radisson and the two floors in awarding those assets to her. She argues discounts were applied to the values of the entities owning the Radisson and the two floors in valuing the overall marital estate, so the values of the Radisson and the two floors, as individual assets of the entities, should have been discounted when they were awarded to her. She argues the values of the Radisson and the two floors should have been discounted by eight percent, which is the discount Kindseth applied to the value of Adams Investment LP. Adams Investment LP owns the two floors and 99 percent of AKA, which owns the Radisson.

[¶ 15] There is no set formula for valuation of a business, especially a closely-held business. *See Kaiser v. Kaiser*, 555 N.W.2d 585, 587 (N.D.1996); *Fisher v. Fisher*, 546 N.W.2d 354, 357–58 (N.D. 1996). This Court has upheld both the application of discounts and the non-application of discounts in cases dealing with the division of marital property. *Kaiser*, at 588 (discount applied); *Fisher v. Fisher*, 1997 ND 176, ¶¶ 23–24, 568 N.W.2d 728 (discount not applied).

[¶ 16] Here the parties had opposing arguments regarding the application of discounts in valuing the marital estate. Sandra Adams argued for no discounts, and presented evidence at trial supporting that argument. John Adams argued Kindseth's recommendations regarding discounts should be adopted. In valuing the business entities, Kindseth applied a discount if she concluded a discount was appropriate on the basis of her overall evaluation of each entity. Kindseth did not apply a discount to AKA, because it had a negative net asset value due in part to the $12,000,000 payable from AKA to Adams Investment LP. In the discount appraisal report for AKA, Kindseth stated, "[B]ecause the calculated net asset value resulted in a negative value, representing an owner liability as opposed to an asset, no discount for lack of marketability is considered applicable to the results of the net asset method."

[¶ 17] As discussed above, the district court adopted the discount recommendations of Kindseth, the court-appointed neutral appraiser. Evidence was presented supporting the application of discounts in valuing the numerous business entities. Evidence was also presented in support of not applying a discount to AKA, which owned the Radisson and had a negative net asset value. The district court valued the Radisson at $10,000,000, which was between Sandra Adams' valuation of $7,750,000, and John Adams' valuation of $12,000,000. The two floors were appraised at an undisputed value of $2,750,000. The district court's valuations of the Radisson and the two floors were within the range of evidence presented. We are not left with a definite and firm conviction a mistake was made in valuing the property awarded to Sandra Adams. We conclude the district court did not clearly err when it did not apply a discount to the values of the Radisson and the two floors in awarding those assets to Sandra Adams.

## III

[¶ 18] Sandra Adams argues the district court erred in applying a two percent interest rate on the equalization payment from John Adams. She argues the court should have applied the 6.5 percent judgment interest rate under N.D.C.C. § 28–20–34, or the six percent rate under N.D.C.C. § 47–14–05.

[¶ 19] In general, a district court's distribution of marital property is reviewed under the clearly erroneous standard. *McCarthy . v. McCarthy*, 2014 ND 234, ¶ 8, 856 N.W.2d 762. When a distribution of property includes periodic cash payments from one spouse to another, however, a district court has broad authority to provide for the payment of interest in order to achieve an equitable distribution of the property. *Dick v. Dick*, 434 N.W.2d 557, 559 (N.D.1989); *Klitzke v. Klitzke*, 308 N.W.2d 385, 390 (N.D.1981); *Rudel v. Rudel*, 279 N.W.2d 651, 656 (N.D. 1979). A court is not limited to awarding interest at the legal rate under N.D.C.C. § 47–14–05; the court may award interest at any appropriate rate, beginning on any appropriate date. *Dick*, at 559. When a district court may do something, it is generally a matter of discretion. *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Krueger v. Grand Forks Cnty.*, 2014 ND 170, ¶ 13, 852 N.W.2d 354. "The party seeking relief must show that the court positively abused its discretion and not that the court made a 'poor' decision." *Id.*

[¶ 20] At trial, neither party testified nor submitted evidence as to an appropriate interest rate to be applied to the equalization payment. Rather, the parties provided argument in their post-trial briefs as to what they believed was an appropriate interest rate, and left the decision up to the district court. John Adams argued the interest rate should be the applicable Federal rate, which is published each month by the Internal Revenue Service under section 1274(d) of the Internal Revenue Code. The applicable Federal rate at the time John Adams filed his post-trial brief was 1.72 percent. Sandra Adams argued that because there was no testimony or evidence regarding an appropriate interest rate, the appropriate rate should be the state judgment interest rate, which was 6.5 percent.

[¶ 21] Here, the district court applied a two percent interest rate on the equalization payment. It explained its reasons for setting the rate at two percent, stating that in the current economy, a two percent rate was appropriate. The rate was within the range of rates argued by the parties. On this record, we cannot conclude the district court abused its discretion in applying a two percent interest rate on the equalization payment.

## IV

[¶ 22] The district court's amended supplemental judgment is affirmed.

[¶ 23] DONOVAN J. FOUGHTY, D.J., DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

[¶ 24] The Honorable Donovan J. Foughty, D.J., sitting in place of Kapsner, J., disqualified.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 25] I concur with the opinion written for the Court by Justice Sandstrom.

[¶ 26] I write separately to emphasize that with regard to the interest on the equalization payment, while there is, as the opinion notes at ¶ 19, broad authority to

provide for the payment of interest on a lump-sum award made to achieve an equitable distribution of property, the manner of payment of that award is of concern in determining whether or not the total distribution of property is equitable. *See, e.g., Tuff v. Tuff*, 333 N.W.2d 421, 424 (N.D.1983) (stating a lump-sum payment over a period of ten years with no interest would need to be discounted in determining whether, at the time of the divorce decree, there was an equitable distribution of property).

[¶ 27]  Thus, the amount of interest is a measure of whether or not the property distribution was equitable.  While the two percent interest rate on the lump-sum equalization payment is not generous, it is, as the opinion notes, within the range of the evidence and two percent is not unreasonable in today's low interest market.  I therefore agree that in this instance the property distribution was equitable.

[¶ 28]  GERALD W. VANDE WALLE, C.J.