2016 ND 169

**John Duane ADAMS, Plaintiff and Appellee, and Cross–Appellant**

v.

**Sandra Kathleen ADAMS, Defendant and Appellant, and Cross– Appellee.**

No. 20150365.

Supreme Court of North Dakota.

Aug. 24, 2016.

Rehearing Denied Sept. 23, 2016.

James R. Brothers, Fargo, N.D., for plaintiff and appellee, and cross-appellant.

Jerilynn Brantner Adams, Fargo, N.D., and Joshua Benson (on brief), Fargo, N.D., for defendant and appellant, and cross-appellee.

CROTHERS, Justice.

[¶ 1] Sandra Adams appeals and John Adams cross-appeals from a district court order calculating and dividing profits earned by the parties' jointly-owned businesses. The order also requires her to reimburse him for payments he made relating to the Radisson Hotel renovation and pay one-half of the parties' 2012 taxes. We affirm in part, reverse in part and remand.

I

[¶ 2] The district court granted the parties a divorce in April 2013 and after an October 2013 trial issued an amended supplemental judgment in June 2014 dividing the parties' complex marital estate valued at approximately $46,500,000. Sandra Adams appealed the decision and this Court affirmed in *Adams v. Adams,* 2015 ND 112, 863 N.W.2d 232.

[¶ 3] The judgment dividing the marital estate required the parties to equally share the profits of their jointly-owned businesses from April 2, 2013, through January 2014. The parties disagreed over the profits generated from the businesses during that time. Each party hired an accountant to calculate the business profits. The parties' profit calculations differed by approximately $1.5 million in cash retained by the businesses due to depreciation expenses. John Adams' accountant deducted the $1.5 million from his profit calculation. Sandra Adams' accountant in-

cluded the $1.5 million in his profit calculation.

[¶ 4] After a hearing where the accountants testified the district court used John Adams' profit calculation and found the parties' businesses generated net profits of approximately $1,134,000 from January 2013 through January 2014. The court also found John Adams made tax payments, credit card payments and payments relating to the Radisson Hotel renovation on Sandra Adams' behalf. After crediting Sandra Adams for her share of the profits the court ordered her to reimburse John Adams $342,191 for payments made on her behalf.

## II

[¶ 5] Sandra Adams and John Adams each raise issues on appeal and cross-appeal regarding the district court's determination of the parties' business profits. Sandra Adams argues the court erred by failing to add back non-cash deductions for depreciation and amortization. John Adams argues the court erred by including profits earned in January, February and March 2013.

[¶ 6] The district court's determination of business profits are a finding of fact subject to the clearly erroneous standard of review. *See, e.g., Keller v. Bolding,* 2004 ND 80, ¶ 24, 678 N.W.2d 578 (district court's determination of damages for lost profits is a finding of fact). A finding of fact is clearly erroneous if no evidence supports it, it is induced by an erroneous view of the law or after reviewing all the evidence we are left with a definite and firm conviction a mistake has been made. *Gabaldon–Cochran v. Cochran,* 2015 ND 214, ¶ 5, 868 N.W.2d 501. "This Court views the evidence in the light most favorable to the findings, and the district court's findings of fact are pre-

sumptively correct." *Id.* (quoting *Feist v. Feist,* 2015 ND 98, ¶ 4, 862 N.W.2d 817).

[¶ 7] Paragraph 43 of the amended supplemental divorce judgment requires the parties to share the business profits:

"Consistent with the parties' interim agreement, for the period April 2, 2013 through January 31, 2014, the combined profits or losses resulting from the parties' jointly owned business enterprises shall be shared equally, making appropriate allowances for the monthly draws each party has received pursuant to paragraph 1 of that agreement. The parties shall be expected to agree as to the selection of any accountant required to make the necessary computations. If they are unable to agree, they may request that the court designate or appoint an accountant to be used for this purpose."

### A

[¶ 8] Sandra Adams argues the district court erred in determining the parties' business profits by failing to add back non-cash deductions for depreciation and amortization. She asserts John Adams controlled the business' finances and it is inequitable for him to benefit from the approximately $1.5 million in cash that he decided to retain as depreciation expenses.

[¶ 9] The judgment does not define "profits" or state how they are to be calculated. Each party hired an accountant to calculate the business profits from April 2, 2013, through January 31, 2014. John Adams' accountant, Steven Johnson, calculated $1,047,471 in net profits for 2013 by reviewing the income tax returns of each entity. Johnson testified he multiplied that amount by nine-twelfths to reach a net profit of $785,603 from April 2, 2013, through December 31, 2013. He testified depreciation and amortization are deductible expenses in calculating net profits.

Johnson did not calculate profits or losses for January 2014.

[¶ 10] Adams Development Company's controller, Michael Fritz, calculated $86,619 in net profit for January 2014 after deducting depreciation and estimated taxes. He testified he derived this figure from the accounting system used by the Adams' businesses.

[¶ 11] Sandra Adams' accountant, Jerry Bremer, calculated $2,694,079 in net profits for 2013. He also reviewed the income tax returns of each entity as a starting point in his calculation. Bremer testified his calculation added back approximately $1.5 million in depreciation expenses because it was more equitable to the parties. He testified John Adams was the sole beneficiary of the cash retained by the non-cash depreciation expense because he controlled the business' finances.

[¶ 12] The district court used Johnson's and Fritz's figures to determine net profits. The major difference between the parties' calculations is the treatment of the depreciation expenses. Johnson and Fritz did not include depreciation in their calculations. Using an equitable approach, Bremer included depreciation in his calculation. Because the judgment did not define profits or state how they were to be calculated, the court made a finding on the business' profits on the basis of the evidence presented.

[¶ 13] The district court's decision to use figures deducting depreciation expenses is supported by the evidence and is within the range of evidence presented. *See Mertz v. Mertz*, 2015 ND 13, ¶ 11, 858 N.W.2d 292 (A district court's valuation within the range of evidence presented will not be set aside unless we have a definite and firm conviction a mistake has been made.). We are not left with a definite and firm conviction a mistake was made in determining business profits. The district court did not clearly err in determining profits by deducting depreciation expenses.

## B

[¶ 14] On cross-appeal John Adams argues the district court incorrectly determined profits under the amended supplemental divorce judgment by including profits earned in January, February and March 2013. We agree.

[¶ 15] The district court used Johnson's 2013 profit calculation of $1,047,471, which included profits from January, February and March 2013. The court did not multiply that amount by nine-twelfths as Johnson did to calculate profits for three-quarters of 2013.

[¶ 16] The amended supplemental divorce judgment states profits shall be shared "for the period April 2, 2013 through January 31, 2014." The district court stated its decision to include January, February and March 2013 profits was consistent with the parties' interim order. The amended supplemental judgment vacated and replaced the interim order. The court's decision to include January, February and March 2013 profits is not consistent with the judgment we affirmed on the first appeal. *Adams*, 2015 ND 112, ¶¶ 1, 22, 863 N.W.2d 232. That judgment is the law of the case and must be followed. *See Investors Title Ins. Co. v. Herzig*, 2013 ND 13, ¶ 10, 826 N.W.2d 310 (law of the case doctrine requires district court to follow this Court's mandate in subsequent proceedings); *State v. Burckhard*, 1999 ND 64, ¶ 7, 592 N.W.2d 523 (same). We reverse and remand for entry of judgment based on profits of $785,603 from April 2, 2013, through December 31, 2013.

## III

[¶ 17] Sandra Adams argues the district court erred by ordering her to

repay John Adams one-half of the payments he made for expenses associated with renovations to the Radisson Hotel before trial.

[¶ 18] Paragraph 16 of the amended supplemental judgment states in part:

"Sandra is awarded the entirety of the business being operated as the 'Radisson Hotel Fargo,' together with floors 15 and 16 of the building known as the 'Radisson Tower.' This property will hereafter be collectively referred to as the 'Radisson.' ... The award to Sandra is free and clear of any right, title or interest on the part of John, Adams Investment Limited Partnership, or AKA Hotel Ventures, Ltd., and it extinguishes any liability on Sandra's part to reimburse Adams Investment Limited Partnership for any payments made by it in connection with the acquisition, operation or renovation of the Radisson. The award to Sandra includes all furnishings, fixtures, equipment, accounts receivable, bank accounts and other forms of tangible or intangible property that are part of the Radisson. This is intended as a transfer of the entire Radisson business as a going concern. John shall make the required transfers to Sandra in his capacity as a general partner of Adams Investment Limited Partnership."

[¶ 19] Between April 2, 2013, and the October 2013 trial John Adams paid $450,000 relating to the Radisson remodel. The district court's order addressed these payments:

"25. After the April 2, 2013, valuation date, John made payments for the remodeling of the Radisson Hotel which totaled $450,000.00 from monies in an account ultimately awarded to him. The Radisson Hotel, which was valued at a date later than all the other assets including the account awarded to John, was awarded to Sandra, Sandra received benefit from those payments as the hotel valuation was established in its remodeled condition and free of debt.

"26. Paragraph 16 of the Trial Court's Amended Supplemental Judgment states in part: '... The award to Sandra is free and clear of any right, title or interest on the part of John, Adams Investment Limited Partnership, or AKA Hotel Ventures, Ltd., and it extinguishes any liability on Sandra's part to reimburse Adams Investment Limited Partnership for any payments made by it in connection with the acquisition, operation or renovation of the Radisson ...'

"27. The Court finds this reference to eliminating any liability on Sandra's part to reimburse Adams Investment Limited Partnership to refer to the amount of money the Radisson Hotel owed to John and Sandra or their various entities on the April 2, 2013, valuation date."

The court found that because the trial judge had no knowledge of the payments made after the valuation date and sought to award equivalent assets to the parties, Sandra Adams should reimburse John Adams $225,000 for the Radisson remodel payments.

[¶ 20] In Sandra Adams' first appeal, *Adams*, 2015 ND 112, 863 N.W.2d 232, the parties and this Court treated the amended supplemental judgment as a "final" judgment. This appeal stems from the parties' disagreement over paragraph 43 of the judgment. Although it now appears the judgment may not have been final as to paragraph 43, the remainder of the judgment, including paragraph 16, is final and was affirmed by this Court. *See id.* at ¶¶ 1, 22. "The effect of an affirmance by the Supreme Court of a judgment of a district court is to leave the

judgment in the same state as if no appeal had been taken. . . ." *In re Estate of Cashmore*, 2013 ND 150, ¶ 15, 836 N.W.2d 427 (quoting *Geier v. Tjaden*, 84 N.W.2d 582 Syll. 1 (N.D. 1957)). Paragraph 16 of the judgment speaks for itself; Sandra Adams was awarded the Radisson "free and clear of any right, title or interest on the part of John."

[¶ 21] John Adams presented additional evidence and the district court made additional findings relating to paragraph 16 of the amended supplemental judgment in a proceeding under paragraph 43 of the judgment. John Adams presented this evidence after the judgment was entered and subsequently affirmed. John Adams testified the payments totaling $450,000 were made before trial and he had the information about the payments at the time of trial. Although it appears he had the opportunity, he did not move to reopen the record to present this evidence before the amended supplemental judgment was entered. *See Larson v. Larson*, 1998 ND 156, ¶¶ 14–15, 582 N.W.2d 657 (motion to reopen is proper procedure to present additional evidence); *Grinaker v. Grinaker*, 553 N.W.2d 204, 209 (N.D.1996) (same). Nor did he seek relief from the judgment under N.D.R.Civ.P. 60(b) after the judgment was entered. John Adams did not employ the proper procedure to present additional evidence relating to the Radisson remodel. *See, e.g., Larson*, at ¶ 14 ("Our rules do not countenance the informal procedure used in this case to supplement the record and introduce new issues after the parties have rested, the hearing has concluded, and the court has issued its memorandum opinion."). The court's decision to consider the additional evidence and make additional findings relating to the Radisson remodel is contrary to our affirmance of the amended supplemental judgment and is erroneous. We reverse that part of the court's order requiring

Sandra Adams to pay $225,000 to John Adams for expenses associated with the Radisson remodel and remand for a recalculation of the amounts owed to the parties.

IV

[¶ 22] Sandra Adams argues she should not have to pay one-half of the parties' 2012 taxes.

[¶ 23] Under the amended supplemental judgment the parties are required to equally share any joint tax liability. The district court found John Adams paid $277,890 for the parties' 2012 federal and state taxes from moneys awarded to him by the court. The court ordered Sandra Adams to pay him one-half of the 2012 taxes. John Adams testified the taxes had not been calculated by April 2013 and were paid after trial in October 2013. He testified he paid the 2012 taxes out of his personal checking account. On cross-examination, when asked if he had proof the taxes were paid from his personal account, John Adams clarified and stated, "Actually, at that time I think it was a joint account." Sandra Adams' counsel again asked if he paid the taxes out of a joint account and John Adams responded, "Yes. Which Sandi had access to." Copies of the checks that paid the 2012 taxes include both John and Sandra Adams' names.

[¶ 24] John Adams paid the 2012 taxes shortly after trial and months before entry of the amended supplemental judgment distributing the marital estate. The parties jointly owned the checking account when the taxes were paid. A payment from a jointly-owned checking account to which both parties had access means both John Adams and Sandra Adams paid the 2012 taxes. The evidence does not support the district court's finding that John Adams paid the parties' 2012 taxes from

personal funds. The court clearly erred in making this finding and we reverse that part of the order requiring Sandra Adams to pay John Adams one-half of the 2012 tax liability. We remand for a recalculation of the amounts owed to the parties.

V

[¶ 25] The order is affirmed in part, reversed in part and remanded for a recalculation of the 2013 profits and the amounts owed to each party consistent with this decision.

[¶ 26] GERALD W. VANDE WALLE, C.J., DANIEL D. NARUM, D.J. and LISA FAIR McEVERS, DALE V. SANDSTROM, JJ. concur.

[¶ 27] The Honorable DANIEL D. NARUM, D.J., sitting in place of KAPSNER, J., disqualified.