2012 ND 122

**Arnold KOSOBUD, Plaintiff, Appellant and Cross–Appellee,**

v.

**Teresa KOSOBUD, Defendant, Appellee and Cross–Appellant.**

**No. 20110296.**

Supreme Court of North Dakota.

June 13, 2012.

Rehearing Denied July 19, 2012.

Deborah Joan Carpenter, Bismarck, N.D., for plaintiff, appellant and cross-appellee.

Suzanne Marie Schweigert, Bismarck, N.D., for defendant, appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Arnold Kosobud appeals and Teresa Kosobud cross-appeals from a judgment [1] granting the parties a divorce, distributing their marital property, and ordering Arnold Kosobud to pay spousal support and attorney fees to Teresa Kosobud. We affirm, concluding the district court's findings of fact on property distribution and spousal support are not clearly erroneous and the court did not abuse its discretion in awarding attorney fees and in denying Arnold Kosobud's post-trial motions.

I

[¶ 2] The parties married in 1966 in North Dakota. They had three children, all now adults. The family moved numerous times to accommodate Arnold Kosobud's employment opportunities. Arnold Kosobud has a college degree in business education and Teresa Kosobud has a high school education and one year of training at a business college. The parties invested in real estate. In the early 1990s Teresa Kosobud had a savings account holding $71,000, which the parties had received from the sale of a home in Grand Forks before payment of about $21,000 in taxes. The parties separated in 1993 when Arnold Kosobud left the family in Sioux Falls, South Dakota, and moved to Bismarck with only his personal items and a pickup truck. He went through bankruptcy, but eventually obtained his real estate license and became a real estate agent and property manager. Arnold Kosobud did not seek a legal separation or divorce at that time. Instead, Arnold Kosobud continued to provide support for the family, and ultimately for Teresa Kosobud alone, ranging from $500 to $1,200 per month. He also

---

1. We treat Arnold Kosobud's premature appeal from the district court's "Orders and Opinions" as an appeal from the subsequently entered consistent final judgment. *See, e.g., Zink v. Enzminger Steel, LLC*, 2011 ND 122, ¶ 1 n. 1, 798 N.W.2d 863.

paid Teresa Kosobud's auto insurance and replaced her vehicles when necessary.

[¶ 3] Arnold Kosobud ceased making the support payments when he commenced this divorce action in December 2009. At the time of trial, Arnold Kosobud was 64 years old, worked in the real estate business, had a five-year average income of $95,200, and owned a home and a rental property in Bismarck. Teresa Kosobud was 63 years old, worked at Macy's, had a five-year average income of $14,400, rented a townhouse in Sioux Falls, and had medical conditions including back pain and high blood pressure.

[¶ 4] Following a hearing, the district court issued an opinion on the divorce issues. Teresa Kosobud moved to amend the judgment under N.D.R.Civ.P. 60(a) and (b)(1) and (6), requesting correction of "clerical" mistakes and mistakes "arising from oversight or omission." Arnold Kosobud moved for a new trial under N.D.R.Civ.P. 59, or in the alternative, for relief from the judgment under N.D.R.Civ.P. 60, challenging the property division and the award of spousal support. The court corrected parts of its decision, but otherwise denied the post-trial motions. The court ultimately awarded Arnold Kosobud $478,911 in marital assets and $282,800 of the debt, resulting in a total marital property distribution of $196,111. The court awarded Teresa Kosobud $30,430 in marital assets and ordered Arnold Kosobud to pay her $70,000 in cash. The court ordered Teresa Kosobud to pay her debts, including a $7,000 loan she had received from her family. The court also ordered Arnold Kosobud to pay a portion of Teresa Kosobud's attorney fees in the amount of $15,000 and to pay her $1,500 per month in spousal support until she begins drawing social security benefits, when the spousal support

award will be reduced to $1,000 per month until she either dies or remarries.

## II

[¶ 5] Both parties challenge the district court's distribution of marital property.

[¶ 6] In *Crandall v. Crandall,* 2011 ND 136, ¶¶ 17–19, 799 N.W.2d 388 (internal quotation marks and case citations omitted), we explained the principles to be considered in distributing marital property and our standard for reviewing marital property distributions:

Under N.D.C.C. § 14–05–24(1), a district court must make an equitable division of the parties' marital estate in a divorce action. In making an equitable distribution of marital property, a court must consider all of the parties' assets. After including all of the parties' marital assets in the marital estate, the court must consider the following factors emanating from *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966), in its distribution of the parties' assets:

... the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

A property division need not be equal to be equitable, but a substantial disparity must be explained. Generally, long-term marriage[s] support[ ] an equal dis-

tribution of [marital] property. However, financial misconduct and dissipation of assets are grounds for an unequal property distribution.

A district court's property distribution is treated as a finding of fact, and we will not reverse [the distribution] unless the district court's findings are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made. A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the trial court. On appeal, we do not reweigh conflicts in the evidence, and we give due regard to the trial court's opportunity to judge the credibility of the witnesses.

[¶ 7] Relying on caselaw from other jurisdictions, Arnold Kosobud argues the district court erred in valuing the parties' marital property at the time of the divorce rather than at the time the parties separated back in 1993. However, this Court has long held that assets accumulated after separation but prior to divorce are included in the marital estate. *See Boeckel v. Boeckel*, 2010 ND 130, ¶ 24, 785 N.W.2d 213; *Lynnes v. Lynnes*, 2008 ND 71, ¶ 14, 747 N.W.2d 93; *Marschner v. Marschner*, 2001 ND 4, ¶ 3, 621 N.W.2d 339; *Kautzman v. Kautzman*, 1998 ND 192, ¶ 10, 585 N.W.2d 561; *Zuger v. Zuger*, 1997 ND 97, ¶ 8, 563 N.W.2d 804; *Keig v. Keig*, 270 N.W.2d 558, 560 (N.D.1978). It is not particularly unusual for divorcing parties to have been separated and living apart for relatively long periods of time before their divorce is finalized. *See, e.g., Peterson v. Peterson*, 2010 ND 165, ¶ 15, 788 N.W.2d 296 (two-year separation); *Lohstreter v. Lohstreter*, 1998 ND 7, ¶ 2, 574 N.W.2d 790 (three and one-half year separation); *Christmann v. Christmann*, 1997 ND 209, ¶ 7, 570 N.W.2d 221 ("several years" separation); *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶¶ 6, 11, 563 N.W.2d 377 (five-year separation); *Shulze v. Shulze*, 322 N.W.2d 250, 251 (N.D.1982) (two-year separation). The sporadic nature of the parties' marriage is certainly a valid consideration for a court in making an equitable division of property under the *Ruff–Fischer* guidelines. *See Hunt v. Hunt*, 2010 ND 231, ¶ 11, 791 N.W.2d 164. But under our law the valuation must occur at the time of divorce, not at the time of separation.

[¶ 8] Moreover, although the 17–year separation here is lengthy, the record reflects that Arnold Kosobud provided monthly monetary support to Teresa Kosobud and provided other family assistance throughout the separation until he filed for divorce in late 2009. The district court specifically noted "the marriage continued without any indication that Mr. Kosobud did not want to continue in the marriage. He continued to support Ms. Kosobud." These findings are supported by the record. We conclude the court did not err in refusing to value marital property at the time of the parties' 1993 separation.

[¶ 9] Teresa Kosobud argues the district court erred in valuing Arnold Kosobud's home in Bismarck at $235,000. In *Eberle v. Eberle*, 2010 ND 107, ¶ 17, 783 N.W.2d 254 (internal quotation marks and case citations omitted), we explained:

A district court's marital property valuations are not clearly erroneous if they are within the range of evidence presented. An owner of real property may testify as to the value of the land with-

out any further qualification or special knowledge. The district court is in a better position than this Court to judge the credibility and observe the demeanor of witnesses and to determine property values.

In this case, Teresa Kosobud's expert appraiser valued the home at $250,000. Arnold Kosobud, the homeowner, valued the home at $234,800. The court's valuation of the home at $235,000 is within the range of the evidence presented and is not clearly erroneous.

[¶ 10] Both parties challenge the district court's valuation of Arnold Kosobud's rental property at $180,000. However, the court's valuation is well within the range of the evidence presented and also is not clearly erroneous.

[¶ 11] Arnold Kosobud argues the district court erred in using income averaging to compute his annual income because this case does not involve child support. Compare Doepke v. Doepke, 2009 ND 10, ¶ 7, 760 N.W.2d 131 ("Under the child support guidelines, a self-employed individual's child support obligation is generally calculated using an average of the individual's self-employment income from the most recent five years.") Courts in this state have used income averaging to resolve divorce-related financial issues other than child support. See, e.g., Dronen v. Dronen, 2009 ND 70, ¶ 42, 764 N.W.2d 675; Ingebretson v. Ingebretson, 2005 ND 41, ¶ 2, 693 N.W.2d 1; Bakes v. Bakes, 532 N.W.2d 666, 669 (N.D.1995). If income averaging is considered a reliable indicator of income for child support purposes, we see no reason why income averaging cannot be used when considering other financial issues involved in a divorce. The court did not err in averaging the parties' incomes in this case.

[¶ 12] Arnold Kosobud argues the district court erred in finding he had "depleted" a financial asset before trial. The court found that

[d]uring the time leading up to trial of this matter, Mr. Kosobud has depleted a money market account which had about $103,000. He had spent all but $20,000 of it prior to trial. He purchased a car which was clearly a luxury item.... Mr. Kosobud has exhibited behaviors which lead me to conclude he has reduced his income and assets voluntarily in order to avoid being required to share assets with Ms. Kosobud or to provide support for her.

There is evidence in the record that Arnold Kosobud spent substantial sums on his girlfriend, on vacations and on personal items. The court's findings are not clearly erroneous.

[¶ 13] We reject Teresa Kosobud's argument that the district court erred in excluding her outstanding attorney fees and a $7,000 loan she received from family members from the marital asset and debt distribution. First, because Arnold Kosobud's outstanding attorney fees were also not included in the marital debt listing, the court did not err in excluding Teresa Kosobud's outstanding attorney fees as well. See Dronen, 2009 ND 70, ¶ 32, 764 N.W.2d 675; Kitzmann v. Kitzmann, 459 N.W.2d 789, 795 (N.D. 1990). Second, although the $7,000 loan debt does not appear on the table of marital assets and debts, the court clearly addressed the loan debt in its decision when it ruled "Ms. Kosobud will be required to pay other items which she listed as debts, including the cost of dental work and repayment of funds borrowed from her family." A court may properly order that a party to a divorce assume separate indebtedness incurred since the separation. See Van Klootwyk, 1997 ND 88, ¶ 11, 563

N.W.2d 377. The court did not err in excluding these debts from the marital property and debt listing in the divorce decree, where the court has considered the impact of those debts in making an equitable distribution.

[¶ 14] Teresa Kosobud argues the district court erred in awarding her less than 50 percent of the marital estate. Arnold Kosobud argues the court erred in awarding Teresa Kosobud any of his post-separation property. The circumstances of this divorce case are unusual. Although the parties were separated for more than 17 years, the court found the "marriage is a long-term marriage" because it "continued" throughout the separation as evidenced by Arnold Kosobud's monthly support of Teresa Kosobud and the family. Furthermore, although the property division was not equal, it is evident the court considered the lengthy separation during this "long-term marriage" and Teresa Kosobud's lack of contribution to Arnold Kosobud's assets during most of that time period in balancing the equities to devise a fair and equitable property distribution. In its decision, the court considered Teresa Kosobud's retention of the proceeds from the sale of the Grand Forks home and Arnold Kosobud's depletion of marital assets. The court ordered Teresa Kosobud to be responsible for some of her post-separation debts. The court recognized that "[t]here simply aren't sufficient funds or assets for either party to live as they wish to at this time" and that "the property distribution is not equal," but found the distribution "equitable considering that Mr. Kosobud will be required to pay spousal support to Ms. Kosobud." Property distribution and spousal support are interrelated and intertwined and must be considered together. *See, e.g., Krueger v. Krueger*, 2008 ND 90, ¶ 9, 748 N.W.2d 671. Under these circumstances, we conclude the court appropriately considered the *Ruff–Fischer* guidelines and its distribution of property is not clearly erroneous.

### III

[¶ 15] Both parties challenge the district court's award of permanent spousal support to Teresa Kosobud in the amount of $1,500 per month.

[¶ 16] In *Becker v. Becker*, 2011 ND 107, ¶¶ 27, 28, 30, 799 N.W.2d 53 (internal quotation marks and case citations omitted), we explained:

A court may award spousal support under N.D.C.C. § 14–05–24.1, which provides, "[T]aking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time." An award of spousal support is a finding of fact that will not be set aside on appeal unless it is clearly erroneous.

The words "disadvantaged spouse" may be a handy label but it is not a term of legal significance. Rather, in deciding whether to award spousal support the court must consider the *Ruff–Fischer* guidelines. . . . The court also must consider the needs of the spouse seeking support and the ability of the other spouse to pay. The court is not required to make a finding on each factor, but it must explain its rationale for its determination.

. . . .

Permanent spousal support is appropriate when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development lost during the course of the marriage. [P]ermanent spousal support . . . provide[s] traditional maintenance for a spouse incapable of adequate rehabilitation or self-support. Even when a

spouse is capable of rehabilitation, permanent spousal support may be an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living.

■■■■ [¶ 17] Arnold Kosobud argues the district court erred in awarding Teresa Kosobud permanent spousal support because he is nearing retirement age and has no ability to pay spousal support. A spousal support obligor's nearing the age of retirement does not immunize the obligor from paying spousal support. *See Snyder v. Snyder*, 2010 ND 161, ¶¶ 9–11, 787 N.W.2d 727; *Sommer v. Sommer*, 2001 ND 191, ¶¶ 17–21, 636 N.W.2d 423. Where, as here, the exact dates of retirement and the resulting income reductions following retirement are unknown, a court may order permanent spousal support despite the obligor's approaching retirement. *See Snyder*, at ¶ 9. The obligor's proper course of action upon voluntary retirement is to move for modification of the support obligation based on a significant change of circumstances caused by the retirement. *See id.; Sommer*, at ¶ 18. The record simply does not support the claim that Arnold Kosobud has no ability to pay the spousal support award.

[¶ 18] Teresa Kosobud argues the district court erred in failing to grant her request for permanent spousal support in the amount of $3,000 per month. In setting the amount of spousal support, the court reasoned:

> Spousal support is probably the most difficult issue to be addressed in this matter. Both parties will soon have the ability to draw social security benefits. Ms. Kosobud will draw higher benefits because of her marriage to Mr. Kosobud. While Ms. Kosobud suggests Mr. Kosobud should pay $3,000 in permanent spousal support, such a require-

ment is not reasonable. Mr. Kosobud is unlikely to be able to sustain his current average yearly income because of his age. Ms. Kosobud will be able to draw social security benefits within a matter of years. Ms. Kosobud had been receiving about $1,200 per month from Mr. Kosobud prior to the time this action was initiated.

> Mr. Kosobud will be required to pay spousal support in the amount of $1,500 per month until Ms. Kosobud begins drawing social security benefits. She is required to notify him when she begins receiving social security. His spousal support will then be reduced to $1,000 per month. Spousal support will terminate on the death or remarriage of Ms. Kosobud.

[¶ 19] The district court considered the appropriate factors in awarding spousal support. We conclude the spousal support award is not clearly erroneous.

IV

■■■■ [¶ 20] Both parties challenge the district court's order that Arnold Kosobud pay $15,000 of Teresa Kosobud's attorney fees. Teresa Kosobud argues the court erred in failing to award her the full amount of $29,564 she had requested for attorney fees incurred to date. Arnold Kosobud contends he should not have been ordered to pay any of Teresa Kosobud's attorney fees. Because Arnold Kosobud's objection to the attorney fee award was not raised in his motion for a new trial, he cannot raise the issue in this appeal. It is well settled that where a motion for new trial is made in the district court the moving party is limited on appeal to a review of the grounds presented to the district court. *See, e.g., Cartier v. Northwestern Elec., Inc.*, 2010 ND 14, ¶ 16, 777 N.W.2d 866.

[¶ 21]  In *Kelly v. Kelly,* 2011 ND 167, ¶¶ 34, 36, 806 N.W.2d 133 (internal case citations omitted), we said:

> Under N.D.C.C. § 14–05–23, the primary standard governing an award of attorney fees in a divorce action is one spouse's needs and the other spouse's ability to pay.  Under that statute, we have recognized that where a party's actions have unreasonably increased the time spent on a case, attorney fees may be appropriate.
>
> . . . .
>
> A district court has discretion in awarding attorney fees as a sanction in divorce actions.  An award of attorney fees as a sanction will not be disturbed on appeal unless the court abuses its discretion.  A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.

[¶ 22]  In ordering Arnold Kosobud to pay a portion of Teresa Kosobud's attorney fees, the district court found he "delayed providing information necessary for trial of this matter and his failure to fully respond to discovery caused a continuance in this matter and required that Ms. Kosobud incur attorney expenses which would not have been necessary had he simply provided requested information in a timely and organized manner."  The court's refusal to award the full amount of attorney fees sought by Teresa Kosobud is obviously premised on the court's recognition that the award was a sanction and the full amount of fees sought was not attributable to Arnold Kosobud's misconduct.  We conclude the district court did not abuse its discretion in ordering Arnold Kosobud to pay $15,000 of Teresa Kosobud's attorney fees.

V

[¶ 23]  Arnold Kosobud argues the district court erred in denying his motion for a new trial under N.D.R.Civ.P. 59, or in the alternative, for relief from the judgment under N.D.R.Civ.P. 60.  Denials of these motions are reviewed under the abuse of discretion standard.  *See Murphy v. Rossow,* 2010 ND 162, ¶ 9, 787 N.W.2d 746; *Cartier,* 2010 ND 14, ¶ 10, 777 N.W.2d 866.  Arnold Kosobud has not established that the court abused its discretion in denying his post-trial motions.

VI

[¶ 24]  It is unnecessary to address other issues raised because they are either unnecessary to the decision or are without merit.  We affirm the judgment.

[¶ 25]  GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DANIEL D. NARUM, D.J., JJ., concur.

[¶ 26]  The Honorable DANIEL D. NARUM, D.J., sitting in place of SANDSTROM, J., disqualified.