2015 ND 270

**Shawn Dale WEIGEL, Plaintiff, Appellant and Cross–Appellee**

v.

**LaRinda Rae WEIGEL, Defendant, Appellee and Cross–Appellant.**

No. 20140412.

Supreme Court of North Dakota.

Dec. 1, 2015.

Carrie L. Francis, Minot, N.D., for plaintiff, appellant and cross-appellee.

Robert S. Thomas, Minot, N.D., for defendant, appellee and cross-appellant.

SANDSTROM, Justice.

[¶ 1]  Shawn and LaRinda Weigel both appeal from a divorce judgment distributing their marital property, granting them equal residential responsibility of their two minor children, and offsetting their child support obligations and ordering LaRinda Weigel to pay Shawn Weigel $1,280 per month for child support.  Shawn Weigel challenges the district court's valuations and distribution of marital property, and LaRinda Weigel challenges the court's child support determination.  We affirm the court's property valuations and distribution, and we reverse the child support determination and remand for further proceedings.

I

[¶ 2]  Shawn and LaRinda Weigel were married in 1996 and have two minor children together.  At the time of trial, he was 43 years old and she was 42.  During the marriage, he worked as an account representative for The Computer Store in Minot, and she worked for LDL Clean, Inc., a janitorial cleaning business operating the ServiceMaster franchise in Minot, which

she co-owns with David Burgess. She also owns two other businesses with Burgess: LDL Spotless, Inc., and LDL Properties, LLP. LDL Properties is a real estate holding company that owns and leases three four-plexes in Minot, and LDL Spotless owns a shop condo in Minot which serves as an office for the three businesses. The parties' property interests also include a marital home, a lake cabin, and two other rental properties in Minot.

[¶ 3] The parties separated in March 2012 and thereafter equally shared residential responsibility of their children. Shawn Weigel sued LaRinda Weigel for divorce in November 2012. At trial, the parties primarily contested the valuation and distribution of their marital property and the award of residential responsibility of their children. At the end of the trial, the parties discussed child support with the court:

MS. FRANCIS: And I think as a housekeeping issue, Mr. Thomas and I have discussed, we'll probably make new child support calculations, unless you're so inclined to do them?

THE COURT: No. I would definitely prefer those if you would do them. Otherwise, I usually just call [the Minot Child Support Enforcement Unit], but go ahead.

MS. FRANCIS: I would prefer that [they] do this one.

THE COURT: I know. I understand that. But if you do do them, if you can agree on them, fine, you should do one for each side.

MS. FRANCIS: Well, I think the problem that comes into play though, is there is different income-producing property, and depending on how the Court distributes that property, I don't think we could do our child support calculations until after the fact, I guess, is what I'm saying.

MR. THOMAS: Your Honor, I would agree with Ms. Francis. We were talking about maybe coming up with some proposed calculations before we got going on this, and we were both experiencing the same difficulty.

THE COURT: Because of the income-producing property?

MR. THOMAS: In the Court's decision, the Court could just indicate so and so should prepare proposed calculations.

THE COURT: Based on the distribution.

MR. THOMAS: Based on the Court's decision.

THE COURT: Okay.

MR THOMAS: And the Court's custody decision.

THE COURT: That makes sense, Mr. Thomas. I will do that. All right, then, Ms. Francis, was there anything else?

MS. FRANCIS: I have nothing further, Your Honor. Thank you for your time.

[¶ 4] The district court issued a decision distributing the parties' marital property, awarding Shawn Weigel property the court found had a net worth of $510,123 and LaRinda Weigel property the court found had a net worth of $504,897. The court valued LaRinda Weigel's interest in her three businesses at $442,868 and distributed her interest in those businesses to her. The court also awarded the parties equal residential responsibility of their two minor children. The court said child support would be established separately under the child support guidelines after entry of judgment, and assistance of the child support enforcement unit may be sought if the parties do not agree on the calculations. A judgment was entered distributing the parties' marital property and awarding

them equal residential responsibility of their children.

[¶ 5] In November 2014, Shawn Weigel appealed from that judgment. In March 2015, he moved this Court to remand for a determination of the parties' child support obligation, and on March 10, 2015, we temporarily remanded to the district court until April 10, 2015, for a determination of child support and entry of an amended judgment. The district court issued an order allowing the parties until March 27, 2015, to submit argument and documentation for the child support determination. On March 27, 2015, both parties submitted briefs and exhibits addressing child support, and LaRinda Weigel requested an evidentiary hearing on the issue. Shawn Weigel's submission included the parties' personal income tax returns for 2013 and 2014 and four separate worksheets calculating LaRinda Weigel's offsetting child support obligation for four different time periods. LaRinda Weigel's submission included the parties' personal income tax returns for 2014 and a worksheet calculating her offsetting child support obligation at $75 per month. On March 30, 2015, LaRinda Weigel submitted a supplemental brief disputing Shawn Weigel's child support calculations and again requesting an evidentiary hearing. On April 10, 2015, the court denied LaRinda Weigel's request for a hearing and determined Shawn Weigel's child support obligation was $1,131 per month and LaRinda Weigel's child support obligation was $2,411 per month after adopting calculations from one of his worksheets. The court offset the parties' obligations and ordered LaRinda Weigel to pay Shawn Weigel $1,280 per month for child support effective October 1, 2014. LaRinda Weigel appealed from the judgment establishing her child support obligation.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeals are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7] Shawn Weigel argues the district court clearly erred in valuing and distributing the parties' marital estate.

### A

[¶ 8] We review a district court's valuation and distribution of marital property as a finding of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Adams v. Adams*, 2015 ND 112, ¶ 13, 863 N.W.2d 232. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Id.* (quoting *McCarthy v. McCarthy*, 2014 ND 234, ¶ 8, 856 N.W.2d 762). We view the evidence in a light most favorable to the findings, and a district court's factual findings are presumptively correct. *Adams*, at ¶ 13. A valuation of marital property within the range of the evidence is not clearly erroneous. *Dvorak v. Dvorak*, 2005 ND 66, ¶ 20, 693 N.W.2d 646. A choice between two permissible views of the evidence is not clearly erroneous if the district court's findings are based on physical or documentary evidence, inferences from other facts, or on credibility determinations. *Adams*, at ¶ 13. Under the clearly erroneous rule, we do not reweigh the evidence, reevaluate conflicts in the evidence, or reassess the credibility of witnesses, and we will not reverse a district court's findings simply because we may have viewed the evidence

differently. *Kosobud v. Kosobud,* 2012 ND 122, ¶ 6, 817 N.W.2d 384.

[¶ 9] Under N.D.C.C. § 14–05–24(1), a district court is required to make an equitable distribution of all the divorcing parties' marital property and debts. "All property held by either party, whether held jointly or individually, is considered marital property, and the court must determine the total value of the marital property before making an equitable distribution." *Hoverson v. Hoverson,* 2013 ND 48, ¶ 9, 828 N.W.2d 510. Marital property ordinarily is valued as of the date of trial. *Grinaker v. Grinaker,* 553 N.W.2d 204, 208–09 (N.D.1996). There is not a set formula for valuing a business, especially a closely-held business. *Adams,* 2015 ND 112, ¶ 15, 863 N.W.2d 232. After the court values the property, it must then equitably distribute the entire marital estate under the *Ruff–Fischer* guidelines, which require the court to consider the following factors in the distribution:

> The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Hoverson,* at ¶ 9 (quoting *Ulsaker v. White,* 2006 ND 133, ¶ 9, 717 N.W.2d 567). *See Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966); *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952).

[¶ 10] There is no set formula or method for distributing marital property; rather, an equitable property distribution is based on the particular circumstances of each case. *Hoverson,* 2013 ND 48, ¶ 10, 828 N.W.2d 510. A property distribution need not be equal to be equitable. *Id.* Generally, a lengthy marriage supports an equal distribution of all marital assets. *Id.* Financial misconduct and dissipation of assets are grounds for an unequal property distribution. *Kosobud,* 2012 ND 122, ¶ 6, 817 N.W.2d 384.

**B**

[¶ 11] Shawn Weigel argues the district court clearly erred in valuing LaRinda Weigel's ownership interest in her three businesses, LDL Spotless, LDL Clean, and LDL Properties. The district court relied on evidence introduced by LaRinda Weigel to value the three businesses on the basis of their assets and debts and valued LDL Clean at $33,923, LDL Spotless at $67,900, and LDL Properties at $341,045. The court distributed her interests in the three businesses to her.

[¶ 12] Shawn Weigel introduced evidence at trial valuing LDL Clean at $750,000, LDL Spotless at $234,947, and LDL Properties at $371,644, and argues the court erred in adopting LaRinda Weigel's evidence to value the three businesses. He argues her valuation for LDL Spotless disregarded a realized gain of about $600,000 from the October 2012 sale of a shop condo office building and her dissipation of the proceeds to reduce the value of the company and also did not include some bank accounts, an equipment trailer, and a pickup.

[¶ 13] When the parties separated, LDL Spotless consisted of a shop condo office building on Elk Drive in Minot and a Monster Vac franchise. During the divorce, LDL Spotless sold the Monster Vac franchise for $6,300 and the shop condo building. According to John Huettl, Shawn Weigel's financial expert, LDL Spotless realized about a $600,000 gain on

the sale of the building. LaRinda Weigel testified the proceeds from the sale were used to reduce business debt and purchase another building for operation of the three businesses. She valued her share of LDL Spotless at $67,900, while Huettl valued the business at $234,947.

[¶ 14] LDL Clean owns and operates the ServiceMaster franchise in Minot. LaRinda Weigel acquired a one-third ownership interest in the business in 2005 for $75,000 and has owned a one-half interest in the business since 2007. LaRinda Weigel presented evidence for three methods of valuing her interest in LDL Clean, with values ranging from $33,923 to $52,216. According to her, under the method adopted by the district court, she valued the total assets of LDL Clean at $219,442, which included $50,000 for the value of the ServiceMaster franchise name and the remainder for vehicles, equipment, and accounts receivable. She testified that after deducting the debts for LDL Clean from the assets, she valued her share of the business at $33,923. Huettl valued LaRinda Weigel's share of LDL Clean at $750,000. According to LaRinda Weigel, Huettl's valuation of her interest in LDL Clean was not reasonable because the business does not have any contracts and has only two full-time employees, herself and Burgess, and about 20 part-time employees. She testified LDL Clean does approximately $500,000 in gross sales per year and made a profit in 2011 and 2012 because of the Minot flood and because the 2012 sale of the shop condo helped reduced LDL Clean's debt. She also testified it would cost her about $100,000 to start a similar janitorial cleaning business in Minot if her interest in LDL Clean were awarded to Shawn Weigel.

[¶ 15] LDL Properties is a real estate holding company owning three separate four-plexes in Minot. The four-plexes are subject to mortgages, and LaRinda Weigel valued her share of LDL Properties at $341,045, while Huettl valued her share of the business at $371,644.

[¶ 16] There is evidence in this record that the proceeds from the sale of the shop condo office building were used to pay off debts attributable to LDL Spotless and the other two businesses and the owners' tax liabilities as well as to purchase another office building for the three businesses. Although Shawn Weigel claims some items of property, including business bank accounts, a pickup, and a trailer, were not included in the court's distribution, there was evidence the pickup was sold during the divorce and the claimed missing bank accounts and trailer were encompassed in the court's valuations of the businesses. The court's valuations of the three businesses were based on LaRinda Weigel's evidence and were within the range of the evidence presented at trial. Shawn Weigel nevertheless claims the court should have used Huettl's valuations for the businesses. He does not argue the court misapplied the law but claims we should be left with a definite and firm conviction the court made a mistake in valuing the businesses. Shawn Weigel's arguments would require us to reweigh the evidence and reassess witnesses' credibility for the property valuations. Although we may have viewed the evidence differently had we been sitting as the trier of fact, our review on appeal is under the clearly erroneous standard. There is evidence in the record supporting the court's findings, and the district court chose to view the evidence in a light that favored LaRinda Weigel. We decline Shawn Weigel's invitation to reweigh the evidence. We are not left with a definite and firm conviction the court made a mistake in valuing LaRinda Weigel's interest in the three businesses, and we conclude the court's valuations are not clearly erroneous.

## C

[¶ 17] Shawn Weigel argues the district court clearly erred in determining a $15,000 farm debt to his father for their joint farming activities from 1993 to 2005 was not marital debt and in not addressing whether an additional $10,000 debt to his father for household expenses after the parties separated was not marital debt. He contends the court clearly erred in deciding handwritten ledger sheets documenting the farm debt were created specifically for trial and the farm debt was not a legitimate marital debt. He also claims a September 17, 2012, promissory note evidences an additional $10,000 loan from his father for living expenses after the parties separated.

[¶ 18] The parties' N.D.R.Ct. 8.3 property and debt listing, which was executed near the time of the March 2014 trial, listed a loan from Shawn Weigel's father, which Shawn Weigel valued at $25,000. LaRinda Weigel, however, did not assign any value to that claimed debt. At trial, Shawn Weigel presented handwritten ledger sheets to document the farm debt to his father, and the district court found the ledger sheets were specifically created for trial and did not represent a legitimate marital debt. There was also evidence Shawn Weigel's father did not list the farm loan as an asset when the father was divorced in 2006.

[¶ 19] The district court addressed the claimed debts:

The investment asset listed as Trans America Investment Fund, was taken by Shawn in August, 2013, after commencement of the divorce action. Shawn's accounting for this asset included payment of $60,000.00 to his father, Don Weigel. Shawn designates this payment as a debt owed to Don Weigel for farming related activities over the years of 1993–2005. Documentation presented to the Court to support this debt consisted of hand written ledger sheets which appeared to have been created specifically for trial. The Court does not find this debt to be legitimate. $60,000.00 dollars will be allocated to Shawn as an asset. The remaining balance of the moneys withdrawn from the Trans America Investment Fund, $9,861.00, were used for legitimate living and bill paying expenses.

[¶ 20] We do not reweigh witness credibility for the determination of the claimed farm debt to Shawn Weigel's father, and we are not left with a definite and firm conviction the court made a mistake in finding the claimed farm debt was not marital debt. The court's decision also reflects the court ostensibly allocated the claimed debt for living expenses to Shawn Weigel. *See Schiff v. Schiff,* 2013 ND 142, ¶ 15, 835 N.W.2d 810 (recognizing a trial court may properly order divorcing party to assume separate indebtedness incurred after parties' separation). We are not left with a definite and firm conviction the court made a mistake regarding the claimed debt for living expenses. We conclude the court's valuations of the parties' marital property are not clearly erroneous.

## D

[¶ 21] Shawn Weigel argues the district court clearly erred in not finding LaRinda Weigel's conduct in dissipating assets constituted economic fraud, which he claims adversely impacted the court's distribution of marital property.

[¶ 22] In distributing marital property, the *Ruff–Fischer* guidelines allow a district court to consider the parties' conduct during the marriage, including fault. *Hoverson v. Hoverson,* 2001 ND 124, ¶ 17, 629 N.W.2d 573. Economic or financial misconduct may be considered

under the *Ruff–Fischer* guidelines. *Id.* "Economic misconduct is misconduct that results in a wasted asset or in the reduction of the net marital estate." *Id.* at ¶ 24. Financial misconduct and dissipation of assets are grounds for an unequal property distribution. *Kosobud,* 2012 ND 122, ¶ 6, 817 N.W.2d 384.

[¶ 23] The district court addressed the *Ruff–Fischer* guidelines without referring to any claimed economic misconduct or fault. Although Shawn Weigel argued to the district court that LaRinda Weigel's actions constituted economic fraud, the court analyzed the *Ruff–Fischer* guidelines without finding any economic misconduct by her. There is evidence LaRinda Weigel used the proceeds from the sale of the shop condo office building to retire business debt and obligations and purchase a second shop condo office building for the businesses. The district court ostensibly concluded LaRinda Weigel's actions did not constitute economic misconduct. We can understand the basis for the court's nearly equal distribution of property, and we are not left with a definite and firm conviction the court made a mistake in distributing the parties' marital property. We conclude the court's property distribution is not clearly erroneous.

### III

[¶ 24] In her cross-appeal, LaRinda Weigel argues the district court erred in determining her child support obligation, because the court relied on information submitted on the limited remand without an evidentiary hearing and also imputed substantial monthly income to her from the sale of the shop condo office building. She argues the court's failure to conduct an evidentiary hearing on the remanded child support issue deprived her of due process. She claims almost none of the income information required by the guide-

lines was introduced into evidence during trial and a hearing would have permitted her to question the accuracy of the new information. She also claims the sale of the building before the divorce was a one-time event and the net proceeds were used to pay taxes, reduce business debt, and acquire another office building. She contends, if she had been granted a hearing, she would have established the sale of the building was not a reliable indicator of her future ability to earn income and pay child support.

[¶ 25] Shawn Weigel responds a hearing was not required because the post-trial materials supplemented and updated the evidence submitted during trial. He argues the court appropriately considered the gain from the building sale in LaRinda Weigel's income as a self-employed person under the child support guidelines. He also argues the court's findings sufficiently explained how it arrived at the parties' child support obligations.

[¶ 26] "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Buchholz v. Buchholz,* 1999 ND 36, ¶ 11, 590 N.W.2d 215. "If the district court fails to comply with the child support guidelines in determining an obligor's child support obligation, the court errs as a matter of law." *Serr v. Serr,* 2008 ND 229, ¶ 10, 758 N.W.2d 739. The proper application of a provision of the child support guidelines is a question of law. *Id.* at ¶ 11. "The failure to properly apply the child support guidelines to the facts involves an error of law." *Korynta v. Korynta,* 2006 ND 17, ¶ 18, 708 N.W.2d 895. When a matter lies within the district court's discretion, "[a]

court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law." *Hagel v. Hagel*, 2006 ND 181, ¶ 9, 721 N.W.2d 1.

[¶ 27] The district court awarded the parties equal residential responsibility of their two children. Under N.D. Admin. Code § 75–02–04.1–08.2, the court was required to determine a child support obligation for each parent. Section 75–02–04.1–02, N.D. Admin. Code, describes the general instructions for determining a child support obligation and requires a determination of net income from all sources. In determining child support, income must be sufficiently documented from tax returns, current wage statements, and other information to fully apprise the court of all gross income. N.D. Admin. Code § 75–02–04.1–02(7).

[¶ 28] Due process requires notice and a meaningful opportunity for a hearing appropriate to the nature of the case. *Combs v. Lund*, 2015 ND 10, ¶ 13, 858 N.W.2d 311. In *Larson v. Larson*, 1998 ND 156, ¶¶ 11–16, 582 N.W.2d 657, this Court considered a similar issue about a child support determination. There, over an objection by the obligee, an obligor supplemented the record on his income with additional evidence submitted without the opportunity for cross-examination after the parties had rested and the court had issued an initial child support decision. *Id.* at ¶ 13. The court considered the additional evidence and issued an amended decision reducing the obligor's monthly child support obligation. *Id.* at ¶¶ 6–7. We explained the abbreviated procedure denied the obligee the full opportunity to challenge the evidence through cross-examination and rebuttal witnesses in open court. *Id.* at ¶ 15. We held the court

erred in amending its decision on the basis of post-hearing submissions, and we remanded for further proceedings. *Id.* at ¶ 16.

[¶ 29] Here the district court provided the parties an opportunity to agree on their child support obligations. The parties did not agree on the child support calculations, however, and presented post-trial evidence and documentation in support of their respective claims. The parties' submissions included personal income tax returns and child support calculations that were not introduced into evidence or provided during the initial divorce trial. The child support guidelines broadly define gross income and net income and give a court some discretion to determine income from self-employment and one-time occurrences. *See* N.D. Admin. Code § 75–02–04.1–02(8). *See also State ex rel. K.B. v. Bauer*, 2009 ND 45, ¶ 12, 763 N.W.2d 462 (explaining that N.D. Admin. Code § 75–02–04.1–02(8) "demonstrates that a district court is not unequivocally bound to past earnings history if the evidence in the record demonstrates that such past earnings are not a reliable indicator of the obligor's actual present or future ability to earn income and pay child support" and "appears to be designed specifically for cases . . . where the obligor's present ability to earn is not accurately reflected in . . . earnings history").

[¶ 30] Here, as in *Larson*, LaRinda Weigel was deprived of an opportunity to challenge Shawn Weigel's evidence, including the most recent personal income tax returns and their relationship to the earlier sale of the office building. We conclude the lack of an evidentiary hearing denied LaRinda Weigel a hearing appropriate for the nature of the issue to be decided and deprived her of due process. We reverse the child support determination and remand for further proceedings.

## IV

[¶ 31] We affirm the district court's property valuations and distribution of marital property, and we reverse the child support determination and remand for further proceedings.

[¶ 32] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.