2014 ND 229

**Elizabeth A. FREY, n/k/a Wonser,**
**Plaintiff and Appellee**

v.

**Gardell Q. FREY, Defendant**
**and Appellant.**

**No. 20140086.**

Supreme Court of North Dakota.

Dec. 18, 2014.

Kent M. Morrow, Bismarck, ND, for plaintiff and appellee.

Daniel H. Oster, Bismarck, ND, for defendant and appellant.

McEVERS, Justice.

[¶ 1]   Gardell Quito Frey appeals a district court amended judgment entered after the court denied his motion to modify primary residential responsibility.   We affirm, concluding the district court did not clearly err in determining modification was not necessary to serve the best interests of the children and did not abuse its discretion in denying back interim child support.

I

[¶ 2]   Gardell Quito Frey married Elizabeth Anna Wonser, previously known as Frey, in 2003 and the parties divorced in 2008.   Based on a settlement agreement between the parties, Wonser was awarded primary residential responsibility of the parties' two children, A.H.F., born in 2003, and A.E.F., born in 2007.   After the divorce, Wonser and the children continued to live in Mott, North Dakota.   In January 2011, Wonser moved with A.E.F. to Alvarado, Minnesota.   A.H.F. stayed in Mott and moved in with Frey in order to finish the school year.   In July 2011, Frey moved to modify primary residential responsibility.   An interim hearing was held in October 2011.   The court issued an interim order granting temporary primary residential responsibility to Frey and parenting time to Wonser.   On August 24, 2012, the district court held an evidentiary hearing on Frey's motion to modify primary residential responsibility.   The district court denied Frey's motion, concluding evidence did not support finding a material change in circumstances to allow modification of primary residential responsibility.

[¶ 3]   Frey appealed to this Court, arguing the district court erred by finding no material change in circumstances occurred. This Court reversed and remanded to the district court, concluding a material change in circumstances occurred and the district court's findings did not provide sufficient specificity to adequately explain its determination that modification was not in the best interests of the children.   *Frey v. Frey*, 2013 ND 100, ¶¶ 11, 13, 831 N.W.2d 753.   Additionally, this Court determined the district court did not adequately explain its reasoning for the denial of back interim child support to Frey. *Id.* at ¶ 17.

[¶ 4]   On remand, a hearing was held on January 10, 2014.   Subsequently, the district court found modification was not necessary to serve the children's best interests because the best interests factors favored primary residential responsibility remaining with Wonser.   Additionally, the district court affirmed its denial of child support to Frey during the interim period, finding that requiring Wonser to pay back interim child support would negatively impact her ability to care for the children. The district also found it was the actions of Frey that extended the period of the interim order.   Frey appealed.

[¶ 5]   On appeal, Frey argues the district court erred in its application of the best interests factors and by not ordering Wonser to pay back interim child support during the interim period.

II

[¶ 6]   A district court's decision whether to modify primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is

clearly erroneous. *Hageman v. Hageman*, 2013 ND 29, ¶ 8, 827 N.W.2d 23. "A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made." *Id.* "In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result." *Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482.

■ [¶ 7] A district court may modify primary residential responsibility if the court finds a material change has occurred and modification is necessary to serve the best interests of the child. *See* N.D.C.C. § 14–09–06.6(6). In the first appeal, we determined a material change occurred because Wonser moved out of state approximately four-hundred miles away and, by agreement with Frey, left A.H.F. in Frey's custody to complete the school year. *See Frey*, 2013 ND 100, ¶ 9, 831 N.W.2d 753 (stating "we conclude the district court's finding that no material change occurred was a misapplication of law and clearly erroneous"). In determining whether the second requirement for modification is satisfied, that modification is necessary to serve the best interests of the child, a court considers the best interests factors under N.D.C.C. § 14–09–06.2(1)(a)–(m). In *Seibold v. Leverington*, we outlined additional considerations for courts analyzing the best interests factors in cases involving modifying primary residential responsibility:

> First, the best interests of the child factors must be gauged against the backdrop of the stability of the child's relationship with the custodial parent, because that stability is the primary concern in a change of custody proceeding. Second, after balancing the child's best interests and stability with the custodial parent, the trial court must conclude that a change in the status quo is required. A child is presumed to be better off with the custodial parent, and close calls should be resolved in favor of continuing custody. A change should only be made when the reasons for transferring custody substantially outweigh the child's stability with the custodial parent.

2013 ND 173, ¶ 11, 837 N.W.2d 342 (citing *Vining v. Renton*, 2012 ND 86, ¶ 17, 816 N.W.2d 63). "The added requirement of showing a change of primary residential responsibility is 'compelled' or 'required' gives some finality to a trial court's original custody decision and helps ensure that a child is not bounced back and forth between parents as the scales settle slightly toward first one parent and then the other." *Gussiaas v. Neustel*, 2010 ND 216, ¶ 12, 790 N.W.2d 476 (quotation marks omitted) (citation omitted). The first time we considered this case on appeal, we remanded to the district court to explain its application of the relevant factors under N.D.C.C. § 14–09–06.2(1)(a)–(m). *See Frey*, 2013 ND 100, ¶ 13, 831 N.W.2d 753.

[¶ 8] On remand, the district court analyzed the evidence considering each of the statutory factors under N.D.C.C. § 14–09–06.2(1) and found factors (a), (d), and (k) favored Wonser, and found factors (b), (c), (e), (f), (g), (h), (i), (j), (*l*), and (m) were equal or favored neither party. Applying its analysis of the factors in the context of a modification of custody, the district court found "it is in the best interest of the children ... [that] the children shall remain with [Wonser] as the primary residential parent."

## III

[¶ 9] Frey argues the district court erred in determining a modification of primary residential responsibility was not necessary to serve the children's best interests and, particularly, in applying the best interests factors (a), (b), (c), (d), (h), (k), and (m). Based on our review of the record, we conclude there is evidence to support the district court's findings of fact and the findings of fact are not clearly erroneous.

### 1

[¶ 10] Frey argues the district court erred in applying factor (a), which pertains to the love, affection, and other emotional ties between the parents and children. The district court concluded this factor favored Wonser, but Frey argues it ignored the fact that Frey had the children during the interim period. Additionally, Frey claims the district court focused on the length of time the children had been with Wonser, but disregarded the quality of that time.

[¶ 11] In finding factor (a) favored Wonser, the district court found Frey "was away from home for 3 years on voluntary deployments with the National Guard. This obviously would lead to a close bond as [Wonser] would be the primary care taker of the children with only limited contact between [Frey] and the children." The district court also acknowledged A.H.F. lived with Frey for four months, so A.H.F. could finish school and then both children lived with Frey from June 2011 through August 2012, as a result of the interim order. There was no testimony regarding the quality of the time Wonser spent with the children. The district court did not ignore the amount of time the children spent with Frey. In fact, the district court included the dates the children lived with Frey in its order. Accordingly, we conclude it was not clearly erroneous for the district court to find factor (a) favored Wonser.

### 2

[¶ 12] Frey argues the district court erred in applying factor (b), which pertains to the ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment. The district court concluded this factor equally favored both parties. However, Frey argues the district court ignored the following facts: Wonser had moved six times since the divorce; Frey owns his own home, while Wonser is renting a house with her fiancé; and, the children have to share a bedroom with Wonser's fiancé's children when they stay at Wonser's home, but would each have their own bedroom at Frey's house. Additionally, Frey asserts the district court did not mention how Wonser earns income or that she has changed jobs numerous times in the past. As such, Frey argues factor (b) should favor him.

[¶ 13] In concluding factor (b) favored both parties equally, the district court acknowledged Frey owns a home where each child has a bedroom and that he ensured the children attended day care and school. The district court found that, although Wonser moved six times since the divorce, she provided the children with all of the necessities, including a rented home to live in where they share bedrooms with her fiancé's children. There was no testimony that Wonser failed to provide food, clothing, medical care, and shelter for her children. Further, Wonser testified she worked full time. Frey testified Wonser did not contribute any money to the children, when he was granted temporary residential responsibility of them. However, the child support order that was in place at that time, which required Frey to pay child support, was temporarily abated by the interim order and did not require

Wonser to pay child support pending hearing on Frey's motion. Disputed testimony was presented as to whether Frey was willing to accept help from Wonser. We conclude the district court did not clearly err in finding factor (b) favored neither party.

3

[¶ 14] Frey argues the district court erred in applying factor (c), regarding the children's developmental needs and the ability of each parent to meet those needs. The district court concluded this factor equally favored both parties. However, Frey argues the children have improved their academic performance since moving in with him. Frey also asserts the district court ignored testimony that Wonser favored the parties' daughter, which caused the son to hit himself and call himself dumb while in her presence. As a result, Frey argues factor (c) should favor him.

[¶ 15] In concluding factor (c) equally favors both parents, the court found both parties were good parents. According to testimony, neither child had particular developmental needs. Further, there was disputed testimony as to whether A.H.F.'s problems in school resulted from worry over his father's deployment or Wonser's favoring of A.E.F. Testimony from numerous witnesses supports that both parties were good parents. Although Frey and his friend Alicia Redich testified that Wonser favored A.E.F., Wonser testified she did not favor A.E.F. "A choice between two permissible views of the weight of the evidence is not clearly erroneous." *Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482. Accordingly, it was within the district court's discretion to believe Wonser over Redich and Frey. As such, we conclude the district court's finding that factor (c) equally favored both parties is not clearly erroneous.

4

[¶ 16] Frey argues the district court erred in applying factor (d), regarding the sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the children had lived in each parent's home, and the desirability of maintaining continuity in the children's home and community. The district court concluded factor (d) favored Wonser. However, Frey argues the district court erred in relying on the amount of time the children were with Wonser, while he was deployed, and in ignoring the amount of time the children were with him during the interim period. Additionally, Frey alleges the district court did not consider the fact that he has remained in the same home since obtaining temporary residential responsibility, while Wonser has moved six times since the divorce. Additionally, Frey contends Wonser has had several live-in-romantic relationships. Frey asserts the district court's determination of the amount of time the children spent with each parent is too simplistic and, instead, the court should have assessed the quality of that time. Additionally, Frey claims the district court ignored testimony that he has family in the Mandan area including a sister, brother-in-law, nieces, nephews, aunts, and uncles. Further, Frey asserts the district court's apparent concern that he may be deployed again should be disregarded, because he is serving his country. As such, Frey argues factor (d) should either favor him or both of them equally.

[¶ 17] In concluding factor (d) favors Wonser, the district court considered the amount of time the children have spent with each parent and also the children's potential for interaction with relatives at each household. The district court found Frey was away from A.H.F. for three of the nine years of his life and was away

from A.E.F. for two years of her life, due to military deployments. The district court acknowledged Wonser permitted A.H.F. to stay in Mott for four months to finish the school year, to avoid uprooting him. The district court noted Frey's stay in Mandan, rather than Mott, required another change in school and daycare for the children. The district court did not ignore the amount of time the children were with Frey during the interim period. In fact, the district court found "[a]t the time of the hearing in 2012 the children had been with [Frey] in Mandan for approximately one year." The district court also found Wonser and her fiancé each had a small group of relatives in Grand Forks, and the Frey children had bonded with Wonser's fiancé's children. The district court acknowledged Frey had family nearby, but was concerned they were not located in Mandan to assist with the children when he had weekend drills or if he was deployed again. Frey testified he would have to go to warrant officer school for four or five weeks and possibly future training for ten or twelve weeks. After this training, Frey would again be eligible to be deployed. Frey testified that he would try to work something out for the children during these times. In concluding its analysis on this factor, the district court found "[Wonser] is favored in this factor at the time of the hearing and with the [c]ourt looking forward in the future possibilities of [Wonser] always being available as she has in the past and the uncertainty of [Frey's] availability in the future." Frey seemingly argues the time he spent away from the children during military deployments and the possibility of being deployed should not be considered in factor (d) analysis, because he was serving his country. However, Frey's argument ignores that this Court has stated "the amount of time [a parent] has spent away from the children for any reason, including that time due to his military obligations, is a relevant consideration under factor (d)." *Lindberg v. Lindberg*, 2009 ND 136, ¶ 12, 770 N.W.2d 252.[1] The district court noted that, except for the approximately one year the children had been with Frey prior to the hearing, the children had been with Wonser their entire life; Wonser had always been available for the children in the past and expected her to continue to be available in the future. We conclude the district court did not solely base its factor (d) determination on Frey's past and future deployments, but rather on the impact of Frey's past and possible future deployments on the children, as well as other considerations. Accordingly, it was not clearly erroneous for the district court to find factor (d) favors Wonser.

5

[¶ 18] Frey argues the district court erred in applying factor (h), regarding the home, school, and community records of the children. The district court concluded this factor favored both parties equally, but Frey asserts the court erred because A.H.F.'s academic performance improved while he was living with Frey. Also, Frey alleges Wonser did not check on A.H.F.'s grades, nor meet with any of A.H.F.'s teachers while he was living with Frey in Mandan. Accordingly, Frey argues factor (h) favors him.

---

1. Although not relied on by either party on appeal or before the district court, our analysis is consistent with N.D.C.C. § 14–09–06.2(2), effective August 1, 2013, which provides "[i]n a proceeding for parental rights and responsibilities of a child of a servicemember, a court may not consider a parent's past deployment or possible future deployment *in itself* in determining the best interests of the child *but may consider any significant impact on the best interests of the child of the parent's past or possible future deployment."* (Emphasis added.)

[¶ 19] In finding factor (h) favors both parties equally, the district court acknowledged A.H.F. improved in school, while staying with Frey. However, the district court found "[t]here could be many reasons [A.H.F.] might have had issues at school and one might be his father had been deployed for the past two years and as [A.H.F.] grew older he would have more anxiety related to his father's deployment." Both parties testified they helped the children with homework and reading. We conclude it was not clearly erroneous for the district court to find factor (h) equally favors both parties.

6

[¶ 20] Frey argues the district court erred in applying factor (k), regarding the interaction and interrelationship of the children with any person who resides in, is present, or frequents the household of a parent, and may significantly affect the children's best interests. The district court concluded this factor favored Wonser, but Frey claims the court ignored testimony that he had family in the area. Further, Frey alleges the district court's conclusion was based on Wonser's fiancé, but the parties had not yet set a wedding date and Wonser had exposed the children to other men in the past. As a result, Frey argues this factor should favor him.

[¶ 21] In finding factor (k) favors Wonser, the district court focused on the interaction the children had with Wonser's fiancé and his children, when they stay with Wonser. The district court found "[t]his family unit with [Wonser]'s fiancée [sic] and his children during parenting times is a very normal environment for the children to grow up in." Further, the district court found although Frey's environment was good, it was somewhat isolated. The district court also noted that Frey's mother assists him with the children on occasion. Although Frey testified he occasionally brought the children to his sister's house to visit, his testimony overall suggested it was just Frey and the children most days. We conclude the district court did not clearly err in finding factor (k) favors Wonser.

7

[¶ 22] Frey argues the district court punished him for deceptive practices, in its consideration of factor (m), because he allegedly delayed scheduling the evidentiary hearing after he was awarded temporary residential responsibility of the children. In considering factor (m), the district court found "[g]ames were played with the system and the Court frowns on such when the children are the pawns." Specifically, the district court cited the incidents of Wonser wrongly moving to Minnesota without Frey's permission, and Frey wrongly retaining the children in violation of the parenting order, until the interim hearing was held. The district court weighed the impact of each party's violation of the previous judgment, noting Wonser's move to another jurisdiction did not affect Frey's distance from the children, or impede his ability to have parenting time. Frey's wrongfully retaining the children did diminish the parenting time of Wonser. The district court did not mention the delay in scheduling the hearing in its analysis of factor (m). Further, the court suggested both parties had "played with the system." We conclude the district court did not clearly err in its factor (m) findings.

IV

[¶ 23] Frey argues the district court erred by not establishing a child support obligation during the interim order period.

[¶ 24] "A district court's decision whether to award past child support is

discretionary and will not be overturned unless the court abuses its discretion." *Rebel v. Rebel*, 2013 ND 116, ¶ 20, 833 N.W.2d 442; *Hammeren*, 2012 ND 225, ¶ 30, 823 N.W.2d 482. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law." *Deyle v. Deyle*, 2012 ND 248, ¶ 20, 825 N.W.2d 245. The failure to award interim child support may constitute error as a matter of law. *Hammeren*, at ¶ 30 (citations omitted). Particularly, when there has been no order for child support in place, failure to award interim child support has been deemed error as a matter of law, because parents have a mutual duty to support their children. *See Johnson v. Johnson*, 2002 ND 151, ¶ 8, 652 N.W.2d 315. However, where *modification* of child support is requested, the district court's decision setting an effective date is subject to review under the abuse of discretion standard. *Bertsch v. Bertsch*, 2006 ND 31, ¶ 7, 710 N.W.2d 113 (emphasis added).

[¶ 25] Here, the district court had previously entered a judgment granting Wonser primary residential responsibility and requiring Frey to pay child support. Frey moved to modify primary residential responsibility on July 18, 2011, requesting a change in primary residential responsibility and child support. Frey brought a separate motion for an interim order, on September 25, 2011, only after Wonser had moved for an emergency order of contempt, when Frey did not return the children as set forth in the divorce decree. As part of Frey's motion for an interim order, Frey specifically requested the district court grant him "reasonable child support or at least abate his present child support obligation." The interim order was put in place on October 21, 2011, which granted Frey temporary primary residential responsibility, and did not require Wonser to pay child support during the interim period, but reserved the right to reconsider child support and back child support. The interim order also "temporarily abated" Frey's obligation to pay child support, as was requested by Frey. The evidentiary hearing was held on August 24, 2012. After the evidentiary hearing, the district court issued an order denying Frey's motion to change primary residential responsibility and his request for child support. In the first appeal, we concluded the district court did not sufficiently explain why it did not award child support during the interim period. *Frey*, 2013 ND 100, ¶ 17, 831 N.W.2d 753. As a result, we remanded "for reconsideration and a reasoned explanation of the district court's ruling." *Id.* On remand, the district court has explained its reasoning more in depth. Specifically, the district court explained:

When the Court placed the children back with their mother, [Wonser], the Court felt to saddle [Wonser] with [Frey's] calculated amount of $5,330 for ten months of back child support bill would negatively impact her ability to care for the children. This would impact the children by requiring the mother to come up with funds to pay back support. The Court finds requiring [Wonser] to pay interim back support would negatively impact the children returned to her primary residential responsibility.

[¶ 26] In contrast to the first time we considered this case, we conclude the district court has adequately explained its decision. The district court's primary reason for not ordering back child support was requiring Wonser to pay back child support would negatively impact the children. After considering the district court's reasoning, we conclude the district

court did not abuse its discretion in declining to order back interim child support. Further, it was not an abuse of discretion for the district court to reserve the right to reconsider interim child support at the final evidentiary hearing.

V

[¶ 27] We affirm, concluding the district court did not clearly err in determining modification was not necessary to serve the best interests of the children and its denial of back interim child support was not an abuse of discretion.

[¶ 28] DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

We concur in the result.   GERALD W. VANDE WALLE, C.J., and DALE SANDSTROM, J.