2016 ND 240

**Danel JACOBS-RAAK, n/k/a Danel Jacobs, Plaintiff, Appellee and Cross-Appellant**

v.

**Daniel RAAK, Defendant, Appellant and Cross-Appellee**

No. 20150360

Supreme Court of North Dakota.

Filed 12/20/2016

Rodney E. Pagel, Bismarck, ND, for plaintiff, appellee and cross-appellant.

Arnold V. Fleck, Bismarck, ND, for defendant, appellant and cross-appellee.

VandeWalle, Chief Justice.

[¶ 1] Daniel Raak appealed and Danel Jacobs-Raak, now known as Danel Jacobs, cross-appealed from a divorce judgment

distributing their marital property and ordering Raak to pay child support. Except with regard to the division of the mineral estate, we conclude the district court did not err as a matter of law, did not abuse its discretion, and its findings of fact are not clearly erroneous. We affirm in part, reverse in part and remand for an identical division of the mineral interest or, in the alternative, further explanation concerning the division of the mineral interest.

## I

[¶ 2] Raak and Jacobs were divorced in October 2015 after a 15-year marriage. The district court awarded Raak a net marital property distribution of $436,234 and Jacobs a net marital property distribution of $499,051. The court awarded primary residential responsibility for the couple's three children to Jacobs and ordered Raak to pay $1,452 per month for child support effective September 1, 2015. The court denied Jacobs' requests that Raak pay her spousal support and her attorney fees.

## II

[¶ 3] Both parties challenge the district court's valuation of certain items of marital property.

[¶ 4] Section 14–05–24(1), N.D.C.C., requires the district court in a divorce case to "make an equitable distribution of the property and debts of the parties." In *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 8, 714 N.W.2d 845, this Court explained:

> The value a trial court places on marital property depends on the evidence presented by the parties. *See Fox v. Fox*, 2001 ND 88, ¶ 22, 626 N.W.2d 660. Because a trial court is in a far better position than an appellate court to observe demeanor and credibility of witnesses, we presume a trial court's property valuations are correct.

*See Hoverson v. Hoverson*, 2001 ND 124, ¶ 13, 629 N.W.2d 573. We will not reverse a trial court's findings on valuation and division of marital property unless they are clearly erroneous. *See Corbett v. Corbett*, 2001 ND 113, ¶ 12, 628 N.W.2d 312. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made." *Kautzman v. Kautzman*, 1998 ND 192, ¶ 8, 585 N.W.2d 561. "A choice between two permissible views of the evidence is not clearly erroneous if the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." *Hoverson*, at ¶ 13. (quoting *Olson v. Olson*, 2002 ND 30, ¶ 7, 639 N.W.2d 701). A property valuation within the range of evidence presented at trial is not clearly erroneous. *See, e.g., Hoverson v. Hoverson*, 2013 ND 48, ¶ 11, 828 N.W.2d 510.

### A

[¶ 5] Raak argues the district court erred in determining the value of his accounting business.

[¶ 6] Raak is a certified public accountant who in 2009 purchased an accounting firm in Bismarck for $300,000. Raak operated the business as Raak & Associates until November 1, 2014, when Raak merged Raak & Associates, the parties' major marital asset, into Capital Accounting Services, PC, without giving notice to Jacobs in violation of the restraining provisions on selling, encumbering, or dissipating marital assets contained in the divorce summons. Neither party obtained an appraisal of Raak's accounting business. At

the divorce trial, the certified public accountant from whom Raak purchased the business in 2009 testified she and her accounting business broker calculated the sale price by using a formula of 125 percent of the prior year's gross receipts. She also testified a reduction for loss of client revenue should also be considered in the sale price. One of Raak's partners in Capital Accounting Services, PC, testified the multiplier rate had dropped to below 100 percent of the prior year's gross revenues at the time of trial because of the increase in the number of accounting businesses being sold in the area. Raak also presented a list of lost clients and claimed his client loss for the year before the merger totaled $87,170.

[¶ 7] The district court determined it had insufficient evidence to value the new accounting firm created after the merger, and decided to value Raak & Associates as of October 31, 2014. The court valued the business at 125 percent of the gross receipts for 2014. The court decreased that amount by $55,000 for lost client revenue rather than the $87,170 claimed by Raak because of "the low level of credibility the Court has for Daniel's testimony" based on his dissipation of assets after commencement of the divorce action and his testimony given during earlier divorce proceedings. The court further reduced the amount by the debt remaining to be paid for Raak & Associates and arrived at a $208,245 net value for the business.

[¶ 8] Raak argues the district court erred in using the 125 percent multiplier used when Raak purchased the business in 2009 from the former owner because there was "no evidence to support it was the current standard in the industry." Because the parties did not present an appraisal on the value of the business to the court, the court was therefore required to determine the value on the evidence before it. *See*

*Olson*, 2002 ND 30, ¶ 7, 639 N.W.2d 701. Not only may an owner of property testify about its value, *see Heggen v. Heggen*, 452 N.W.2d 96, 99 (N.D. 1990), but the woman who sold the business to Raak was herself an accountant and Raak acquiesced in the sale using this method of valuation. Although Jacobs contends no deduction should be made for lost client revenue without considering potential new client revenue, the former owner acknowledged the value should be lower if clients leave and Raak, also an accountant, testified potential new clients are not considered in the sale price. Raak complains that the court should have deducted $87,170 instead of $55,000 for lost client revenue because there were no grounds to question his credibility. "In bench trials, the credibility of witnesses and the weight to be given their testimony are both exclusively functions of the trial court." *Weber v. Weber*, 512 N.W.2d 723, 727 (N.D. 1994). We conclude the court's valuation of Raak & Associates is within the range of the evidence presented and is not clearly erroneous.

B

[¶ 9] Raak argues the district court erred in placing a $12,580 value on a motorcycle awarded to him rather than his $9,000 valuation. However, Raak testified he would pay $12,000 for the motorcycle, Jacobs testified she would take the motorcycle at the $12,580 valuation she estimated, and Jacobs presented an exhibit indicating the suggested retail value of this type of motorcycle was in excess of the court's valuation. The court noted Raak "had custom work done on the bike after he bought it" and the evidence showed he "highly prizes his motorcycles" and "the bike is likely in excellent condition." We conclude the court's valuation of the motorcycle is not clearly erroneous.

[¶ 10] Raak claims the court erroneously valued jewelry at $1,000 instead of his estimate of $17,500. Jacobs valued the jewelry at $2,500 before trial. However, during trial both parties agreed to eliminate the value of the most expensive pieces of jewelry if Jacobs would give the parties' children those pieces when they reached adulthood. We conclude the valuation of the jewelry is not clearly erroneous.

### C

[¶ 11] The parties argue about a one-third remainder interest which Jacobs shares with her two brothers in property owned by Jacobs' parents. This property includes mineral interests in Adams and Stark counties and surface real estate in Adams County. While the parties placed no value on the remainder interest in the minerals, the parties agreed to divide the mineral interests between them with their children ultimately receiving the mineral interests. They stipulated the value of the remainder interest in the surface real estate based on an appraisal was $275,000. The district court ordered the remainder interest in the minerals be divided equally, but that Raak's share be a life estate only with the minerals going to the children upon his death. The court awarded the remainder interest in the real property to Jacobs.

[¶ 12] Raak argues his remainder interest is worth less than Jacobs's remainder interest. Although the parties assigned no value to the minerals, it is disingenuous to believe mineral interests in Adams and Stark Counties, in the oil-producing Bakken formation in North Dakota, have little or no value or that a life estate in those minerals is valued the same as a fee simple absolute interest. Furthermore, if it was the intention of the parties that their children ultimately receive the minerals, the district court order, without explanation, assures that result with regard to Raak's interest in the minerals but not Jacobs. While the district court may appear to have adhered to the agreement of the parties in that presently each would receive an equal remainder interest in the minerals, it clearly did not do so by limiting Raak's interest to a life estate while awarding Jacobs a fee simple absolute in the minerals. Although there may be reason for the district court to allocate the minerals in the manner it did, that reason is not apparent in the court's decision. The parties agreed to an equal division of the mineral interests. Because that division is not equal, we reverse and direct the district court to order an identical division of the minerals or explain its reason for not doing so.

[¶ 13] Jacobs argues the district court erred in awarding her the remainder interest in the real property which had a stipulated value of $275,000. Jacobs requested the remainder interest be sold and the proceeds distributed between the parties because she did not want the property. A court does not err if it rejects one party's suggestion that certain marital property be sold instead of awarded to that party. *Cf. Schoenwald v. Schoenwald*, 1999 ND 93, ¶¶ 22–23, 593 N.W.2d 350 (court did not err in ordering farm sold and proceeds divided even though wife wanted to keep farm). Jacobs may sell the remainder interest herself and receive the proceeds. We conclude this argument is without merit.

### D

[¶ 14] Jacobs argues the district court erred in failing to include in the marital debt "loans" from her parents which the court determined were "gifts."

[¶ 15] Whether payments are intended as "loans" or "gifts" is a question of fact which will not be reversed on appeal

unless clearly erroneous. *See Marquette v. Marquette*, 2006 ND 154, ¶ 15, 719 N.W.2d 321. Here, Jacobs' father testified he "borrowed" money to the parties, including $25,000 for a down payment on their marital home. He testified the loan agreement was "verbal," no written loan contract was prepared, and he has not demanded repayment. The court's finding that these payments were "gifts" rather than "loans" is not clearly erroneous.

■ [¶ 16] Jacobs argues the district court erred in ruling $32,310 she received from her father for living and other expenses after the parties separated was "non-marital debt" for which she was responsible. A court may allocate repayment of post-separation debt to the party who incurred the debt. *See Kosobud v. Kosobud*, 2012 ND 122, ¶ 14, 817 N.W.2d 384; *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 33, 673 N.W.2d 601. Jacobs has not convinced us the court erred in doing so in this case.

[¶ 17] Jacobs argues the district court erred in failing to include in the marital estate monetary gifts from Raak's parents which he did not accept after the parties separated. We agree with the court's resolution of this issue:

> Testimony shows that the couple had received annual cash gifts from Daniel's family valued at around $5,000 per year, but that those gifts were not provided since the separation. Danel suggests that Daniel has declined those gifts since the separation and that he should somehow be penalized for declining gifts. The Court has enough issues trying to divide the property the couple has, let alone the property the couple might have received as a gift. The Court declines to address the "allegedly declined gifts."

We conclude the court did not err in not including in the marital estate unreceived gifts from Raak's parents.

### E

[¶ 18] Raak argues the district court erred in failing to order Jacobs to make an equalization payment to him because she was awarded a larger share of the net marital estate.

[¶ 19] We have often said a property division need not be equal to be equitable, but a substantial disparity must be explained. *See, e.g., McCarthy v. McCarthy*, 2014 ND 234, ¶ 10, 856 N.W.2d 762. A lengthy marriage generally supports an equal division of marital assets. *Id.* The district court awarded Jacobs a net distribution of $499,051 and Raak a net distribution of $436,234, a difference of $62,817. The court explained why it did not order Jacobs to make a $30,000 equalization payment to Raak:

> The Court finds that it is not equitable to require Danel to make an equalizing payment to Daniel because he has already used marital assets to pay $20,000 in attorney's fees out of the business account of Raak & Associates and he has squandered $7,350 in marital assets, even after he had received the Summons which prohibited him from doing so. The Court finds it equitable to order that Danel should receive a greater share of the marital assets so that she can pay her attorney's fees. While there is no ready source of cash, Danel may have to leverage some of her anticipated inheritance to pay her attorney.

[¶ 20] We conclude the district court's explanation is sufficient to justify the disparity and the court's distribution of marital property and debt is not clearly erroneous.

### III

■ [¶ 21] Jacobs argues the district court erred in failing to award her spousal support.

[¶ 22] In *Schmuck v. Schmuck*, 2016 ND 87, ¶ 6, 882 N.W.2d 918, we explained:

"A court may award spousal support under N.D.C.C. § 14–05–24.1." *Harvey v. Harvey*, 2014 ND 208, ¶ 15, 855 N.W.2d 657. A district court must consider the *Ruff-Fischer* guidelines in determining whether spousal support is appropriate, including:

[T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.*; *see Fischer v. Fischer*, 139 N.W.2d 845, 852 (N.D. 1966); *Ruff v. Ruff*, 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952). "The court must also consider the needs of the spouse seeking support and the ability of the other spouse to pay." *Woodward v. Woodward*, 2013 ND 58, ¶ 4, 830 N.W.2d 82. "The court is not required to make specific findings on each factor if we can determine the reasons for the court's decision." *Norberg v. Norberg*, 2014 ND 90, ¶ 31, 845 N.W.2d 348. "Property distribution and spousal support are interrelated and often must be considered together." *Id.* Both economic and noneconomic fault are proper factors for the district court to consider. *Reineke v. Reineke*, 2003 ND 167, ¶ 8, 670 N.W.2d 841.

A spousal support determination is a finding of fact that will not be reversed on appeal unless clearly erroneous. *See, e.g.,* *Degnan v. Degnan*, 2016 ND 61, ¶ 10, 877 N.W.2d 38.

[¶ 23] The district court found that Jacobs is 47 and Raak is "52 or 53 years old." The court found Raak "has the capacity to earn much more than" Jacobs. Raak had an "average earning capability" of $60,000 while Jacobs, who had not been employed full-time but worked a variety of part-time jobs, could earn approximately $26,000 per year if she worked full-time. The court noted the 15-year marriage was "not an unusually long" one, and the parties "have a middle class station in life." While Jacobs "has no health concerns," Raak "has diabetes, high blood pressure, and suffers from some depression." The court noted Jacobs had $3,528.51 in monthly expenses and Raak had $5,130 in monthly expenses, which would be much higher given the child support he was ordered to pay, and "[a]t an income of $60,000 per year his net monthly take-home will ... not be sufficient to meet his expenses." The court noted that Jacobs was awarded the marital home, albeit subject to significant debt, a vehicle, a modest retirement account, and a "significant interest in her inheritance from her parents," while Raak "will have the business, which has the potential to generate significant income; substantial retirement accounts; and several vehicles."

[¶ 24] In deciding to not award Jacobs spousal support, the district court reasoned, "while it is clear that Danel has need of support, the Court cannot find that Daniel has the current means to pay that support on a monthly basis. Daniel will be paying $1,495 per month in child support and that will assist Danel in making ends meet." Jacobs raises no issue about the court not retaining jurisdiction to award spousal support if circumstances change in the future. *See Schmuck*, 2016 ND 87, ¶¶ 22–29, 882 N.W.2d 918 (court did not err in refusing to retain jurisdiction to

award spousal support in the future). Upon our review of the record, we conclude the court's decision to deny Jacobs' request for spousal support is not clearly erroneous.

## IV

[¶ 25] Both parties challenge certain aspects of the child support award.

[¶ 26] In *Langwald v. Langwald*, 2016 ND 81, ¶ 16, 878 N.W.2d 71, we said:

"Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. "If the district court fails to comply with the child support guidelines in determining an obligor's child support obligation, the court errs as a matter of law." *Verhey v. McKenzie*, 2009 ND 35, ¶ 5, 763 N.W.2d 113.

[¶ 27] On August 30, 2013, after commencement of the divorce action, the parties entered into a "pre-Interim Hearing" agreement giving Jacobs "sole possession of the mar[it]al home commencing . . . August 30, 2013," and stating "the children shall be in her sole care" subject to Raak's parenting time schedule. The agreement also provided in relevant part:

IV. Expenses: Commencing September 1, 2013 and for the months of September and October, 2013, Daniel shall pay Danel child support in the amount of <u>767.00</u> consistent with his gross income of <u>$40,-000.00</u>. It is agreed upon by the parties that this child support amount may need to be adjusted as full discovery has not been provided and this support obligation may not reflect all relevant factors at this early stage of this matter.

[¶ 28] Addressing child support in its decision, the district court stated:

The Court finds that Daniel's income for child support purposes from self-employment has fluctuated. Because Capital Accounting Services, PC, has not been in operation for long, it is not a good indicator of what Daniel's income will be. The Court will average Daniel's income from 2012 and 2013 for purposes of child support, with an income for child support purposes of $60,924, resulting in a child support obligation for three children in the sum of $1,452 per month. (Pl. Ex. 32). This amount shall be paid beginning September 1, 2015. Child support from August 2013 through August 2015 shall be at the rate the parties agreed upon, $767.00 per month.

[¶ 29] Jacobs argues the district court erred in not requiring Raak to pay $1,452 per month, rather than $767 per month, extending back to August 2013 because the parties' agreement contemplated, and the evidence at trial ultimately established, that the proper amount of child support was the higher amount. A district court's decision whether to award past child support is discretionary and will not be overturned unless the court abuses its discretion. *See Frey v. Frey*, 2014 ND 229, ¶ 24, 856 N.W.2d 781; *Hammeren v. Hammeren*, 2012 ND 225, ¶ 30, 823 N.W.2d 482. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law. *Frey*, at ¶ 24. Although the August 2013 agreement could be read to allow for retroactive modification of the $767 amount, the court was not bound to follow the terms of the parties' agreement concerning child custody or support. *See Tiokasin v. Haas*, 370 N.W.2d 559, 562–63 (N.D. 1985). It is evi-

dent here the court determined the stipulated interim amount of support paid by Raak was sufficient to provide for the children, and to order a retroactive increase in child support would pose an unnecessary burden on Raak. Jacobs has not convinced us the court abused its discretion.

[¶ 30] Raak argues the district court erred in determining his monthly child support obligation during the time this action was pending commenced on August 1, 2013, instead of September 1, 2013, as stated in the parties' agreement, because it is undisputed the parties separated on August 30, 2013. Once again, the court was not bound by the parties' agreement and the court has discretion to set the date of the commencement of a child support obligation. *See Wilson v. Wilson*, 2014 ND 199, ¶¶ 13–16, 855 N.W.2d 105; *Hagel v. Hagel*, 2006 ND 181, ¶ 9, 721 N.W.2d 1. August 2013 was the month the parties agreed upon custody and support. The court did not abuse its discretion in requiring child support payment for this additional month. Raak also argues in his reply brief that the court erred in failing to explain how it arrived at the $767 per month child support obligation and there is evidence supporting a downward deviation of the presumptive amount. We do not address issues raised for the first time in a reply brief. *See Hoverson*, 2013 ND 48, ¶ 27, 828 N.W.2d 510; *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 20, 603 N.W.2d 896.

[¶ 31] We conclude the district court did not err in setting Raak's child support obligation.

## V

[¶ 32] Jacobs argues the district court erred in refusing to grant her request for an award of attorney fees.

[¶ 33] In *Walstad v. Walstad*, 2013 ND 176, ¶ 28, 837 N.W.2d 911, we said:

"A district court has discretion to award attorney fees and costs in divorce actions under N.D.C.C. § 14–05–23." *Martinson v. Martinson*, 2010 ND 110, ¶ 14, 783 N.W.2d 633 (citing *Heinle v. Heinle*, 2010 ND 5, ¶ 32, 777 N.W.2d 590). In deciding a request for attorney fees and costs under N.D.C.C. § 14–05–23, the trial court must:

> balance one [party's] needs against the other [party's] ability to pay. The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case. An award of attorney fees requires specific findings supported by evidence of the parties' financial conditions and needs.

*Martinson*, at ¶ 14 (quoting *Heinle*, at ¶ 32). "In determining whether to award costs and attorney fees, fault is a consideration only to the extent one party has unreasonably escalated the fees." *Martinson*, at ¶ 24 (citing *Wagner v. Wagner*, 2007 ND 101, ¶ 23, 733 N.W.2d 593).

[¶ 34] The district court noted that the parties had incurred "substantial" attorney fees, but declined to assign fault for those fees to either party because the actions of both parties contributed to them. The court found Raak did not have "the current means to pay" spousal support and specifically awarded Jacobs "a greater share of the marital assets so that she can pay her attorney's fees." We conclude the court did not abuse its discretion in refusing to grant Jacobs' request for an award of attorney fees.

## VI

[¶ 35] The judgment is affirmed in part, reversed in part, and remanded for further proceedings as directed in this opinion.

[¶ 36] Dale V. Sandstrom

Daniel J. Crothers

Kapsner, Justice, dissenting.

[¶ 37] I respectfully dissent from that part of the opinion which remands and directs either an identical division of an unvalued remainder mineral interest or an explanation of why the district court fails to do so. I dissent because I do not see how this Court can single out one asset, which the parties did not value, and reverse because the district court ordered it to be distributed on a different basis unless that one asset causes the entire property division to be inequitable.

[¶ 38] The remainder interest in the minerals was equally divided; the parties stated they wanted their children to have the minerals eventually. The remainder interest was a gift from Jacobs' parents, the life estate holders who were still alive at the time of trial. It would be unknown whether Jacobs or Raak would realize any income from the mineral interest at any time soon. Jacobs received a fee simple in her half of the remainder interest; Raak received a life estate in his half of the remainder interest. The difference is in the restraint on alienation. Jacobs could alienate hers; Raak could not, but the distribution does accomplish Raak's stated purpose to get the minerals to the children. Perhaps because the gift was from Jacobs' family, the district court felt that Jacobs was less likely to alienate this interest.

[¶ 39] Regardless of the motivation, the real issue is the majority opinion does not say how the entire property division is made inequitable by this difference in distribution. Would the trial court have treated the other real property received from Jacobs' parents differently had the mineral interests been distributed identically?

[¶ 40] I would affirm the entire decision of the district court because I do not believe this difference in distribution makes the entire property distribution inequitable.

[¶ 41] Carol Ronning Kapsner

Lisa Fair McEvers